Jerry CONNOR, Plaintiff,

v.

Officer FOSTER, et al., Defendants.

No. 92 C 2770.

United States District Court,
N.D. Illinois, E.D.

Oct. 1, 1993.

---

Terry L. McDonald, Michael David Jacobs, Cook County State's Attorney's Office, Chicago, IL, for defendants.

## MEMORANDUM OPINION

GRADY, District Judge.

Jerry Connor brings this pro se action seeking damages and declaratory relief pursuant to 42 U.S.C. § 1983 against two Cook County Corrections investigators, a doctor at the Cook County Jail, and a former director of the Cook County Department of Corrections. Investigator Charles Foster, the only defendant whom Connor has succeeded in serving, moves to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

According to the allegations of the complaint, Foster and Officer John Doe captured Connor on August 5, 1990. Connor had taken an unauthorized leave from the electronic home detention program he had been placed under in lieu of serving his pretrial custody time in the Cook County Jail. Just prior to his capture, Connor and a female companion had taken drugs intravenously. Connor's companion placed the hypodermic needle that they had used in the pocket of one of Connor's shirts. Connor put the shirt on as he left the apartment not knowing the needle was in the pocket.

Connor was captured soon after he left the apartment. Connor tried to elude capture, but the officers, firing their weapons, succeeded in catching him. Once the officers had secured Connor in handcuffs, Doe conducted a frisk search. Doe pricked his finger on the hypodermic needle in Connor's pocket in the course of the search. Connor alleges Doe reacted to his injury by grabbing Connor around his neck and threatening to choke him. He maintains Foster then hit him in the ribs, slapped him, and threw him against the car. Both investigators allegedly continued to beat the handcuffed Connor.

After subduing him, the investigators took Connor to the emergency room of the Cermak Hospital at the Cook County Jail where he signed a consent form to submit to a blood test to determine if he was infected with

Jerry Connor, pro se.

antibodies of the Human Immunodeficiency Virus ("HIV"), which has been identified as an etiologic agent for Acquired Immune Deficiency Syndrome or AIDS. Although Connor signed the consent form, he alleges he did so under duress. He avers that Doe and Foster verbally threatened him with physical harm in order to get him to agree to sign the consent. Dr. Aaron Hamb administered the test. Connor alleges that Hamb tested him in violation of the general policy regarding HIV tests, failed to advise him of possible consequences, and failed to ascertain whether his consent was voluntary. He further alleges that Leak, then director of the Cook County Department of Corrections, failed to investigate the incidents after Officer Doe filed an injury report and failed to protect Connor from discriminatory and unreasonable treatment by correctional employees.

These allegations come primarily from the complaint and Connor's responsive brief. Giving these pleadings a liberal construction as required under *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), the court understands Connor to allege essentially two claims against Foster. Connor first charges Foster with using excessive force to effectuate his capture. He also seeks to hold Foster liable for compelling him to submit to the HIV test in violation of his right to privacy under the fourth and fourteenth amendments. Foster's motion does not address the excessive use of force claim. As to the second claim, Foster asserts that the allegations regarding the HIV test fail to state a claim upon which relief can be granted against him in either his individual or official capacities and that he is entitled to qualified immunity. Agreeing that Foster is entitled to qualified immunity, the court dismisses Connor's claim that Foster compelled him to take the HIV test in violation of his rights under the fourth and fourteenth amendments.

■ Public officials are immune from liability for monetary damages under § 1983 if their conduct did not violate clearly established constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 815–16, 102 S.Ct. 2727, 2736–37, 73 L.Ed.2d 396 (1982). The qualified immunity issue is one of law that the court should decide at the earliest possible stage of the litigation. *Hunter v. Bryant,* — U.S. —, —, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991). Although qualified immunity is an affirmative defense, it is one that may, in some circumstances, be raised and decided on a motion to dismiss before the parties have commenced discovery. *Landstrom v. Illinois Dept. of Children & Family Services,* 892 F.2d 670, 675 n. 8 (7th Cir.1990). Once defendant has raised the issue, the burden is on plaintiff to demonstrate that the constitutional right at issue was clearly established at the time of defendant's actions. *Klein v. Ryan,* 847 F.2d 368, 371 (7th Cir.1988). A right is clearly established only if its contours are sufficiently particularized in relation to the specific facts of the case so as to put a reasonable official on notice that his actions are unconstitutional. *Rakovich v. Wade,* 850 F.2d 1180, 1209 (7th Cir.) (en banc), *cert. denied,* 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988).

■ Connor has cited no cases that could support a finding that he had a clearly established constitutional right to refuse to submit to an HIV test under the circumstances of this case. State law, however, as Foster points out, explicitly sanctioned the testing of Connor. Effective January 1, 1990, Illinois amended its statutes to dispense with the need for written informed consent to conduct an HIV test "when a law enforcement officer is involved in the line of duty in a direct skin or mucous membrane contact with the blood or bodily fluids of an individual which is of a nature that may transmit HIV, as determined by a physician in his medical judgment." 410 ILCS 305/7(c) (1992). Connor admits that he is a drug user and that Doe stuck himself on the hypodermic needle Connor had used to inject drugs intravenously into his system shortly before the investigators took him into custody. His practice of sharing hypodermic needles for intravenous drug use put Connor at high risk for contracting HIV. Moreover, one who accidently pricks himself on a needle contaminated with the blood of a person infected with the HIV virus may also contract the virus. *Harris v. Thigpen,* 941 F.2d 1495, 1503 n. 13 (11th

Cir.1991). The puncture wound Doe suffered in conducting a frisk search of Connor therefore clearly contained the potential for transmission of HIV. Thus, under Illinois law, Foster did not need Connor's written consent to force him to undergo a blood test to determine the presence of HIV antibodies. Connor cannot hold Foster liable for coercing him to waive a right Connor did not even possess.

Foster had no reason to doubt the constitutionality of the Illinois statute that authorized the testing of Connor. Connor himself does not contend that the statute authorizing medical officials to conduct the blood test without his consent was unconstitutional under the circumstances here. Moreover, although caselaw in this developing area is scant, this court's own research could find no closely analogous cases that would arguably support a constitutional challenge to the statute. The one case the court did find would support the constitutionality of the statute as it applied to Connor.

In *Virgin Islands v. Roberts*, 756 F.Supp. 898 (D.V.I.1991), the government sought an order to compel an alleged rapist to undergo a blood test to determine his HIV status. Results of the test would be disseminated only to the defendant, the victim, and their doctors. In a well-reasoned opinion, the court held that the compulsory extraction of the alleged rapist's blood was reasonable under the fourth amendment and did not violate his constitutional rights because the putative rapist's interest in bodily security was greatly outweighed by the government's interests in protecting victims of sexual assault and in procuring information essential both to fashion a proper medical regimen for the victim and to curb further transmission of AIDS. The state also has a significant interest in protecting its law enforcement officers from serious injury suffered in the line of duty. From the complaint, it appears that medical officials disclosed results of the test only to Doe and Connor. Although Connor alleges that he did not purposefully harm Doe, Connor's violation of the law directly caused the injury. Possession of a hypodermic needle for use of controlled substances is a criminal act in Illinois. 720 ILCS 635/1 (1992). Consequently, caselaw, as it has developed since the time of the incident, would lead a law enforcement officer to believe that a person responsible for exposing another officer to a significant threat of contracting HIV could legally be compelled to undergo a blood test for HIV infection. Connor's signed consent to take the HIV test therefore was not needed under either Illinois law or constitutional law as it was understood in August 1990. Foster accordingly is entitled to qualified immunity on Connor's claim that he used threats to force Connor to sign the consent form. Accordingly, the court grants Foster's motion to dismiss Connor's claim that Foster compelled him to take the HIV test.[1]

On November 19, 1992, Connor submitted a USM–285 form giving the United States Marshal instructions for service on Dr. Aaron Hamb. The court construes this document as a request by Connor to amend the complaint to substitute Dr. Hamb as defendant in lieu of the Doctor John Doe listed in the caption of the complaint. The request to amend is granted. Nonetheless, finding no arguable legal merit to the claims alleged against the doctor, the court, on its own motion, dismisses Hamb from the action pursuant to 28 U.S.C. § 1915(d). *See House v. Belford*, 956 F.2d 711, 719 (7th Cir.1992).

1. Qualified immunity, of course, bars only Connor's claim for damages. Connor also asks for a declaratory judgment "that defendants acts and practices describe [sic] herein violated Rights under the United States Constitution." Past exposure to illegal conduct, however, is not enough to establish standing with respect to Connor's request for equitable relief. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105–06, 103 S.Ct. 1660, 1667, 75 L.Ed.2d 675 (1983); *Knox v. McGinnis*, 998 F.2d 1405, 1413 (7th Cir.1993). The possibility that Connor will again be required to submit to a test for the HIV virus as a result of an encounter with a law enforcement officer is extremely remote. As Connor has no present right at stake, his mere request to have Foster's conduct declared unconstitutional is not enough to establish a live case or controversy over his challenge to the HIV test. *See Ashcroft v. Mattis*, 431 U.S. 171, 172–73, 97 S.Ct. 1739, 1740, 52 L.Ed.2d 219 (1977) (per curiam); *Robinson v. City of Chicago*, 868 F.2d 959, 966 (7th Cir. 1989), *cert. denied*, 493 U.S. 1035, 110 S.Ct. 756, 107 L.Ed.2d 773 (1990).

Connor cannot hold Hamb liable for forcing him to submit to an unwanted medical procedure. Although Hamb administered the HIV test to Connor, Connor does not allege that Hamb had any actual knowledge that Connor's signed consent to take the test was coerced. He maintains only that Hamb should have known because Connor was brought directly to the emergency room for testing contrary to the general procedure established for administering HIV tests to detainees. Connor further complains that the unusual procedure Hamb followed constituted "discriminatory treatment". As a matter of equal protection, discriminatory treatment requires differential treatment of similarly situated individuals. *Wroblewski v. City of Washburn*, 965 F.2d 452, 459 (7th Cir.1992). Connor was not similarly situated to a detainee who, for the sake of his own knowledge and well-being, decided he wanted to have his blood tested for the presence of HIV antibodies. Connor was brought to the emergency room because he had placed Doe at risk of contracting AIDS as a result of Connor's carrying a dirty needle around with him in his pocket. The unusual procedure was dictated by the unusual circumstances. Hamb thus did not treat Connor discriminatorily. Nor, given the events that prompted the testing, was the absence of a prior request through routine channels enough to put Hamb on notice of the possibility that Connor's consent to have his blood tested for HIV was not voluntarily given.

Even if Hamb had knowledge that Connor had not freely signed the consent form, he, like Foster, would still be entitled to qualified immunity. As already discussed, state law gave him authority to draw Connor's blood for HIV testing even if Connor did not consent. As no reasonable health official would have had cause to believe the statute was unconstitutional as applied to Connor in the circumstances of this case, Connor cannot hold Hamb liable for taking Connor's blood.

The court also sua sponte dismisses Leak from the action pursuant to 28 U.S.C. § 1915(d). Connor makes no claim that his rights were violated by any official policy, custom, or practice of the Cook County Department of Corrections. Therefore, the court does not read the complaint to allege any claims against former director Leak or the other defendants in their official capacities. To hold Leak liable in his individual capacity, Connor must allege something more than his supervisory position. *See Duckworth v. Franzen*, 780 F.2d 645, 650 (7th Cir.1985), *cert. denied*, 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986). He must show that Leak, acting under color of law, caused the deprivation of a federal right. *See Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). A showing of causation requires allegations of personal involvement, a showing that the supervisor "knowingly, willfully, or at least recklessly caused the alleged deprivation by his action or failure to act." *Rascon v. Hardiman*, 803 F.2d 269, 274 (7th Cir.1986). Connor's vague allegations that Leak should of known of the officers' alleged misconduct in administering the HIV test because he was in charge of overall operations and, as supervisor, should have received a report on the facts surrounding his capture fall far short of demonstrating Leak's personal participation in or direct responsibility for the alleged deprivations. It is not enough to show that a supervisor may have been remiss in his supervisory duties. *Id.* at 273. Nor does a supervisor become a personal participant in a deprivation simply because he receives some after-the-fact knowledge of a single incident of misconduct by his underlings. *Crowder v. Lash*, 687 F.2d 996, 1005–06 (7th Cir.1982); *see Moore v. Indiana*, 999 F.2d 1125 at 1129 (7th Cir.1993). Lacking the necessary allegations of personal involvement, the complaint as to Leak is frivolous in the legal sense. He accordingly is dismissed from the action.

In conclusion, the court grants Foster's motion to dismiss. Plaintiff is given leave to amend the complaint to substitute Dr. Aaron Hamb as a defendant in place of Doctor John Doe. The court, its own motion, summarily dismisses defendants Hamb and Leak from the action. Case to continue on plaintiff's excessive use of force claim against Foster and Officer John Doe.