John and Jane DOE, on their own behalf and on behalf of all others similarly situated, Plaintiffs,

v.

CITY OF CHICAGO, City of Chicago Department of Police, Dr. James J. Bransfield, and U.S. Occupational Health, Defendants.

No. 94 C 4122.

United States District Court, N.D. Illinois, Eastern Division.

Nov. 16, 1994.

Harvey M. Grossman, Geoffrey R. Kors, The Roger Baldwin Foundation of ACLU, Inc., Michael C. Cook, Edward W. Schwartz, McCullough, Campbell & Lane, Chicago, IL, for plaintiffs, John Doe, Jane Doe.

Susan S. Sher, Corp. Counsel of The City of Chicago, Patrick J. Rocks, Jr., Patricia M. Carroll–Smit, Barbara L. Anderson, Asst. Corp. Counsels, Chicago, IL, for defendants, City of Chicago, City of Chicago Police Dept., Dr. James J. Bransfield.

Edward R. Theobald, Law Office of Edward R. Theobald, Camillo F. Volini, Chicago, IL, Russell J. Luchtenburg, Russell J. Luchtenburg, Ltd., Park Ridge, IL, for defendant, Dr. James J. Bransfield.

John F. Horvath, Mary Kay Morrissy, Horvath & Lieber, P.C., Chicago, IL, for defendant, United States Occupational Health, Inc.

## MEMORANDUM OPINION AND ORDER

CONLON, District Judge.

John and Jane Doe (collectively "plaintiffs") sue the City of Chicago ("the city"), the City of Chicago Department of Police ("the police department"), Dr. James J. Bransfield, and U.S. Occupational Health, Inc. ("USOH") (collectively "defendants"). Plaintiffs' second amended complaint ("the complaint") alleges that defendants tested plaintiffs for the Human Immunodeficiency

Virus ("HIV") after plaintiffs applied for positions as Chicago police officers. Plaintiffs claim that their applications were rejected after plaintiffs tested positive for HIV.

Plaintiffs assert claims under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983, the Illinois AIDS Confidentiality Act, 410 ILCS 305/5, and Illinois common law. Plaintiffs seek compensatory and punitive damages, declaratory and injunctive relief, and attorneys' fees. Plaintiffs also seek to pursue their claims in a class action suit. The city, Dr. Bransfield, and USOH move to dismiss the complaint pursuant to Fed. R.Civ.P. 12(b)(6) and 12(b)(1).

### BACKGROUND

For purposes of a motion to dismiss, the court accepts all well-pleaded allegations in the complaint as true. *See, e.g., Dawson v. General Motors Corp.*, 977 F.2d 369, 372 (7th Cir.1992). Plaintiffs are applicants for positions as police officers. John Doe applied for a position as a police officer in 1989; Jane Doe applied for a position in 1991. Complaint, ¶¶ 12, 13. Both plaintiffs passed the written test required of all candidates and were given "Well Qualified" status by the police department. *Id.*, ¶¶ 13, 24. Both also passed a required psychological examination. *Id.*, ¶¶ 14, 25.

Plaintiffs were required to take a physical examination. John Doe received a letter prior to the physical purporting to be a conditional offer of employment. The offer was conditioned on the completion of a background investigation and Doe passing both the physical examination and the Illinois law enforcement physical fitness test. Complaint, ¶ 16. Jane Doe received no conditional offer of employment prior to undergoing the physical examination. *Id.*, ¶ 27.

USOH conducted HIV testing on both plaintiffs as part of the physical examination. *Id.*, ¶¶ 18, 30. Neither plaintiff gave consent to the HIV test or were provided counseling prior to or during the test. *Id.* Plaintiffs were subsequently notified that they had tested positive for HIV. *Id.*, ¶¶ 19, 33. John Doe was notified of his status by Dr. Brans-

field. *Id.*, ¶ 19. Defendants did not provide plaintiffs counseling regarding the results of the HIV test. *Id.*, ¶¶ 20, 34. Thereafter, the processing of plaintiffs' employment applications stopped, and both candidates were denied employment by the police department. *Id.*, ¶¶ 22, 35. After this action was filed, Jane Doe's application was reopened. *Id.*, ¶ 36.

Plaintiffs allege that defendants maintain a "custom, practice, or policy" of: (1) testing candidates for HIV as a condition of employment without medical justification; (2) requiring a physical examination prior to providing candidates with a valid conditional offer of employment; (3) failing to obtain consent or provide counseling with regard to HIV tests; and (4) refusing to hire candidates solely because of their HIV-positive status. Complaint, ¶ 10. Plaintiffs further assert that defendants subjected them to HIV testing pursuant to this custom. *Id.*, ¶ 11.

### DISCUSSION

#### I. Motions To Dismiss

When considering a motion to dismiss, the court must accept all well-pleaded facts as true, and must draw all inferences in favor of the non-moving party. *See Bontkowski v. First National Bank*, 998 F.2d 459, 461 (7th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 602, 126 L.Ed.2d 567 (1993). In ruling on a motion to dismiss, the court considers whether relief is possible under any set of facts that could be established consistent with the allegations in the complaint. *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir.1992) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)). A claim may be dismissed only if it is beyond doubt that under no set of facts would plaintiffs' allegations entitle them to relief. *See, e.g., Venture Assoc. Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 432 (7th Cir.1993).

#### II. Defects In The Complaint

Defendants allege that plaintiffs fail to state their particular claims and also assert a number of defects in the complaint as a

whole. Defendants' arguments regarding the entire complaint are considered first.

### A. *Rules 8 and 10*

■ The city moves to dismiss the second amended complaint for failure to comply with rules 8 and 10(b) of the Federal Rules of Civil Procedure. Rule 8 provides, in relevant part, that any claim shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). Rule 8 also states that "each averment of a pleading shall be simple, concise, and direct." Fed.R.Civ.P. 8(e)(1). Rule 10(b) requires that "all averments of claim or defense shall be made in numbered paragraphs, the contents of each of which shall be limited as far as practicable to a statement of a single set of circumstances.... Each claim founded upon a separate transaction or occurrence ... shall be stated in a separate count or defense whenever a separation facilitates the clear presentation of the matters set forth." Fed.R.Civ.P. 10(b).

The city notes that the second amended complaint does not set forth each legal claim in a separate count. The city asserts that the complaint "combines all factual allegations and legal claims into one incomprehensible mass and leaves it to defendants to determine which allegations support which claims." City's Motion, ¶ 4. The city also argues that some of plaintiffs' claims may be barred by applicable statute of limitations, but that the failure of plaintiffs to include relevant dates fails to provide notice of this possible defense.

■ The city's argument is meritless. Rules 8 and 10(b) require only " 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). The second amended complaint sets out, in numbered paragraphs, particular factual allegations. Included in these factual allegations are the approximate dates when plaintiffs applied for positions as police officers and when plaintiffs received notice that they had been disqualified. *See* Complaint, ¶¶ 12–21, 23–35. The complaint concludes with the assertion of claims in numbered paragraphs that state the legal grounds on which relief is sought. *Id.*, ¶¶ 46–51. Advancing the claims asserted against defendants in separate counts would have made the complaint clearer. However, plaintiffs' allegations are clear enough to provide sufficient notice. Accordingly, plaintiffs have complied with Rules 8 and 10(b).

### B. *Proper Parties*

■ The city asserts that the claims against the police department must be dismissed. The police department is a department of the city without a separate legal existence. The police department is therefore not a suable entity, and all claims brought against it must be dismissed. *See Jordan v. Chicago, Dep't of Police*, 505 F.Supp. 1, 3 (N.D.Ill.1980). Accordingly, the claims against the police department are dismissed.

■ The city argues that the claims against Dr. Bransfield in his official capacity must also be dismissed. The complaint names Dr. Bransfield as a defendant in both his official and personal capacities. Complaint, ¶ 7. The city notes that claims against municipal officials in their official capacities are treated as claims against the municipality itself. *See Kentucky v. Graham*, 473 U.S. 159, 169, 105 S.Ct. 3099, 3107, 87 L.Ed.2d 114 (1985). The city argues that the claim against Dr. Bransfield in his official capacity must therefore be dismissed as redundant.

■ There is no basis for dismissing the claims against Dr. Bransfield in his official capacity. Official-capacity suits against municipal officials are cognizable only if the plaintiff would otherwise have a cause of action against the municipality itself; however, this does not imply that official capacity suits may never be maintained when the municipality is also a party. *See, e.g., Hill v. Shelander*, 924 F.2d 1370, 1372 (7th Cir. 1991); *Wilson v. Civil Town of Clayton*, 839 F.2d 375, 382 (7th Cir.1988). The particular claims brought against Dr. Bransfield in his official capacity must be dismissed if those claims cannot be asserted against the city.

However, plaintiffs official-capacity claims will not be dismissed for redundancy.

### C. 735 ILCS 5/2–622

█ Dr. Bransfield and USOH allege that the complaint must be dismissed for failure to comply with Section 2–622 of the Illinois Code of Civil Procedure. Section 2–622 states, in relevant part:

In any action ... in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice, the plaintiff's attorney ... shall file an affidavit ... declaring one of the following

 1. That the affiant has consulted and reviewed the facts of the case with a health professional....

 2. That the affiant was unable to obtain a consultation required by paragraph 1 because a statute of limitations would impair the action....

735 ILCS 5/2–622. Dr. Bransfield and USOH contend that plaintiffs' claims are barred by their failure to attach a Section 2–622 affidavit to the complaint.

Rule 2–622, as a state procedural rule, is plainly inapplicable to plaintiffs' federal claims. Federal courts applying the requirements of Rule 2–622 have done so only in diversity cases. Rule 2–622 is applied in diversity cases because exempting malpractice suits arising under Illinois substantive law from the requirements of Illinois procedural law would encourage forum shopping. *See Thomas v. Kishwaukee Valley Medical Group,* 1986 WL 11381 (N.D.Ill. Oct. 6, 1986) at 2. No similar danger of forum-shopping occurs in suits arising under federal law where the federal courts have original jurisdiction. Therefore, Rule 2–622 does not apply to plaintiffs' federal claims.

█ The section is also not applicable to plaintiffs' state law claims. Cases construing section 2–622 have recognized that it is designed to deter the filing of frivolous medical malpractice lawsuits. *See Woodard v. Krans,* 234 Ill.App.3d 690, 175 Ill.Dec. 546, 556, 600 N.E.2d 477, 487 (1992); *Cato v. Attar,* 210 Ill.App.3d 996, 155 Ill.Dec. 500, 502, 569 N.E.2d 1111, 1113 (1991). The pro-

visions of this statute also apply to negligence suits against medical professionals. *Woodard,* 175 Ill.Dec. at 556, 600 N.E.2d at 487. Plaintiffs do not assert malpractice claims against defendants. Instead, they allege violations of the Illinois statutes governing AIDS testing and assert a claim for infliction of emotional distress. Accordingly, plaintiffs' failure to comply with 735 ILCS 2/622 does not bar plaintiffs' state law claims.

### III. *The Americans With Disabilities Act*

Defendants move to dismiss any claims arising under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* Dr. Bransfield and the city note that plaintiffs fail to allege that they exhausted their remedies before the EEOC, as required by the ADA. *See, generally, EEOC v. Harris Chernin, Inc.,* 10 F.3d 1286, 1288 n. 3 (7th Cir. 1993). USOH states that plaintiff cannot state a claim against it because it is not a "covered entity" with regard to plaintiffs.

Plaintiffs do not dispute defendants' allegations. Instead, plaintiffs deny that the complaint contains an ADA claim against defendants. Plaintiffs state that the complaint refers to the ADA only because the standards and guidelines promulgated under the ADA apply to the Rehabilitation Act. *See* 29 U.S.C. § 794(d). The court accepts plaintiffs' explanation of the complaint's reference to the ADA. Because the complaint contains no ADA claim, defendants' motions to dismiss the ADA claims are moot.

### IV. *The Rehabilitation Act*

█ Section 504 of the Rehabilitation Act ("Section 504") provides, in relevant part:

No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....

29 U.S.C. § 794(a). In order to state a claim under Section 504, plaintiff must allege (1) the existence of a state program receiving federal financial assistance, (2) that plaintiff

is an intended beneficiary of the federal assistance, and (3) that plaintiff is a qualified handicapped person who was subjected to discrimination solely by reason of his or her handicap. *Simpson v. Reynolds Metals Co.,* 629 F.2d 1226, 1231–32 (7th Cir.1980); *John A. v. Gill,* 565 F.Supp. 372, 384 (N.D.Ill. 1983). The standards used to identify violations of Section 504 are the same standards applied under the Americans with Disabilities Act. 29 U.S.C. § 794(d).

### A. *HIV Testing and Section 504*

 The city argues that the alleged HIV testing of plaintiffs cannot violate Section 504. The city contends that nothing in the statute prohibits medical testing before or after a conditional offer of employment.

Regulations promulgated under Section 504 establish the circumstances under which a recipient of federal funds may conduct medical tests of applicants to the funded program. These regulations provide, in relevant part:

> (a) Except as provided in paragraphs (b) and (c) of this section, a recipient may not conduct a preemployment medical examination or may not make preemployment inquiry of an applicant as to whether the applicant is a handicapped person or as to the nature or severity of a handicap. A recipient may, however, make preemployment inquiry into an applicant's ability to perform job-related functions.
>
> \* \* \* \* \* \*
>
> (c) Nothing in this section shall prohibit a recipient from conditioning an offer of employment on the results of a medical examination conducted prior to the employee's entrance on duty, *Provided,* That: (1) All entering employees are subjected to such an examination regardless of handicap, and (2) the results of such an examination are

used only in accordance with the requirements of this part.

45 C.F.R. § 84.14.[1]

The regulations interpreting Section 504 plainly define the circumstances under which a recipient of federal funds may conduct preemployment medical tests. The regulations require that a conditional offer of employment precede the test and that the tests be conducted in accordance with the requirements of Section 504. Jane Doe alleges that she never received an offer of employment prior to her medical examination. John Doe alleges that he received an offer of employment, but that it was conditioned on factors other than a medical examination.[2] Both plaintiffs allege that the HIV test was used to discriminate against HIV-positive applicants without a medical or other rational basis for doing so. Use of a medical test to discriminate solely on the basis of handicap is not in accord with the provisions of Section 504, which specifically prohibit discrimination against the disabled. Accordingly, plaintiffs have alleged that the testing violated Section 504.

### B. *"Otherwise Qualified"*

 The city also argues that plaintiffs are not "otherwise qualified" for the jobs sought, and therefore do not come within the protections of Section 504. An "otherwise qualified" individual is "one who is able to meet all of a program's requirements in spite of his handicap." *Southeastern Community College v. Davis,* 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979). The city contends that plaintiffs are not "otherwise qualified" because they did not complete the testing required of Chicago police officers.

Plaintiffs allege that they are otherwise qualified. Plaintiffs assert that they passed

---

**1.** Similar language concerning medical testing is contained in EEOC regulations interpreting the ADA. *See* 29 C.F.R. § 1630.14.

**2.** It is unclear whether John Doe's offer constituted a valid conditional job offer. Doe alleges that his offer was invalid because it explicitly conditioned employment on a background check. EEOC enforcement guidelines require conditional job offers to be *bona fide. EEOC Enforcement Guidelines,* No. 915.002, May 19, 1994 at 36–37.

Whether an offer is *bona fide* depends largely on whether the employer could reasonably have evaluated all relevant non-medical information prior to extending the offer. *Id.* Determining if the offer of employment was *bona fide* therefore requires the court to determine if defendants could reasonably have evaluated the background check information prior to extending their offer. This depends on facts outside the complaint.

the written and psychological examinations administered as preconditions to employment as police officers. Plaintiffs' positive HIV test is the sole basis alleged for the city's refusal to further consider plaintiffs' applications. Plaintiffs do not allege any facts suggesting that they could not have met the city's requirements had they been allowed to proceed further. Accordingly, the facts alleged in the complaint support an inference that plaintiffs were "otherwise qualified" within the meaning of Section 504.

### C. *Receipt of Federal Funds*

 USOH and Dr. Bransfield seek to dismiss the Section 504 claims against them on grounds that they are not recipients of federal assistance. Plaintiffs allege only that the police department receives substantial federal funds. Complaint, ¶ 40.

 In order to state a rehabilitation act claim, plaintiffs must allege the existence of a program receiving federal financial assistance. *Simpson*, 629 F.2d at 1231. Plaintiffs allege that they were excluded from the police department, a program purportedly receiving federal financial assistance. In relevant part, Section 504 defines a program receiving federal financial assistance as:

> all of the operations of ... the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government.

29 U.S.C. § 794(b).

The complaint alleges that USOH and Dr. Bransfield acted in concert with the city in performing HIV testing on plaintiffs. Drawing all inferences in plaintiffs' favor, as must

be done on a motion to dismiss, the complaint alleges that USOH and Dr. Bransfield acted within "the operations of" the police department. This suffices to state a Section 504 claim against USOH and Dr. Bransfield.

 Dr. Bransfield and USOH further contend that they cannot be held liable under Section 504 because they were not capable of accepting funds on behalf of the police department. In *United States Dep't of Transp. v. Paralyzed Veterans of America*, 477 U.S. 597, 106 S.Ct. 2705, 91 L.Ed.2d 494 (1986), the United States Supreme court determined that the obligations of Section 504 apply only to "those who are in a position to accept or reject those obligations as a part of the decision whether or not to 'receive' federal funds." *Id.* at 606, 106 S.Ct. at 2711. *Paralyzed Veterans* has been understood to insulate those not capable of accepting or rejecting federal funds from Rehabilitation Act liability. *See Glanz v. Vernick*, 756 F.Supp. 632, 637 (D.Mass.1991).[3]

*Paralyzed Veterans* does not change the pleading requirements for Section 504 claims. Instead, *Paralyzed Veterans* appears to afford those incapable of accepting or rejecting federal funds with an affirmative defense to liability. *Paralyzed Veterans* does not require that a Section 504 claim allege that defendants were capable of accepting public funds. Indeed, both *Paralyzed Veterans* and later cases involved motions in which evidence of defendants' capacity to make funding decisions were part of the record. *See Paralyzed Veterans*, 477 U.S. at 607, 106 S.Ct. at 2712 (relying on evidence in administrative rulemaking proceeding); *Glanz*, 756 F.Supp. at 632 (summary judgment motion); *see also Chaplin v. Consolidated Edison Co.*,

---

**3.** Plaintiffs contend that Congress overruled *Paralyzed Veterans* in enacting the Civil Rights Restoration Act of 1987 ("the Restoration Act"), Pub.L. 100–259, 102 Stat. 28 (1988). The Restoration Act extended the reach of Section 504 to cover "all the operations of" a program receiving federal funds. However, the Restoration Act did not result in the sweeping change plaintiffs suggest. The Restoration Act requires only "that any program in an institution that receives federal financial aid, no matter how specific the purpose or program for which that aid is given, must follow the guidelines of the Rehabilitation

Act." *Leake v. Long Island Jewish Medical Center*, 869 F.2d 130, 131 (2d Cir.1989). The Restoration Act supersedes earlier Supreme Court precedent holding that only the specific program receiving federal funds must comply with Section 504. *See Grove City College v. Bell*, 465 U.S. 555, 104 S.Ct. 1211, 79 L.Ed.2d 516 (1984); *Conrail v. Darrone*, 465 U.S. 624, 104 S.Ct. 1248, 79 L.Ed.2d 568 (1984). The Restoration Act does not address *Paralyzed Veterans'* holding that only persons capable of accepting or rejecting federal funds are liable under Section 504.

587 F.Supp. 519, 521 (S.D.N.Y.1984) (refusing to dismiss Section 504 complaint against defendants alleging they were not recipients of federal funding). Accordingly, *Paralyzed Veterans* cannot properly be read to modify the general requirement that a Section 504 plaintiff need allege only that defendants were part of the operations of a program receiving federal funds.

*Paralyzed Veterans* does not otherwise bar plaintiffs' Section 504 claims against USOH and Dr. Bransfield. The complaint does not specifically indicate whether USOH and Dr. Bransfield were authorized to accept or reject federal funds on behalf of the police department. However, USOH and Dr. Bransfield could exercise such authority consistently with the allegations of the complaint. The complaint sufficiently alleges that USOH and Dr. Bransfield were part of the operations of the police department, a program allegedly receiving federal funding. Accordingly, plaintiffs' failure to specifically allege that USOH or Dr. Bransfield were capable of accepting federal funds is not a proper basis for dismissing plaintiffs' Section 504 claims.

### D. *Qualified Immunity*

 Dr. Bransfield moves to dismiss the Section 504 claim against him on grounds of qualified immunity. The doctrine of qualified immunity protects government officials performing discretionary functions from liability for civil damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). It is important to resolve qualified immunity questions at the earliest possible stage in litigation so as to minimize the disruption of an official's duties. *Hunter v. Bryant,* 502 U.S. 224, 226, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991).

Dr. Bransfield cites numerous cases holding that HIV-testing or denial of positions to HIV-positive applicants was justified. *See Anonymous Fireman v. Willoughby,* 779 F.Supp. 402 (N.D.Ohio 1991); *Plowman v. United States Dep't of Army,* 698 F.Supp. 627, 638 (E.D.Va.1988). Two cases involve

claims under Section 504. *See Local 1812, American Federation of Government Employees v. United States Dep't of State,* 662 F.Supp. 50, 54 (D.D.C.1987) (HIV-positive persons not "otherwise qualified" under Rehabilitation Act for Foreign Service Duty); *Bradley v. University of Tex. M.D. Anderson Cancer Ctr.,* 3 F.3d 922, 925 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1071, 127 L.Ed.2d 389 (1994) (HIV-positive individual not "otherwise qualified" to work as surgical technologist); *Severino v. North Ft. Myers Fire Control Dist.,* 935 F.2d 1179, 1182 (11th Cir.1991) (Rehabilitation Act claim not proper for HIV-positive firefighter terminated for job conduct, not handicap). Dr. Bransfield contends that these cases establish that HIV-testing or denial of job opportunities to HIV-positive applicants does not violate a clearly-established right under Section 504.

Plaintiffs argue that Section 504 clearly establishes a right to nondiscriminatory application of programs receiving federal assistance. Plaintiffs note that none of the cases cited by Dr. Bransfield suggest that Section 504 is inapplicable to HIV-positive individuals. Plaintiffs cite cases indicating that HIV-positive individuals are covered by Section 504's provisions and that the risk of spreading HIV does not necessarily prevent them from being "otherwise qualified" employees. *See Doe v. District of Columbia,* 796 F.Supp. 559, 569 (D.D.C.1992) (citing cases).

The cases cited by both parties demonstrate that the scope of rights afforded by Section 504 necessarily depends on the particular factual context. If it is established, for example, that the risk of HIV-transmission led Dr. Bransfield to conclude that plaintiffs were not "otherwise qualified" to serve as police officers, Dr. Bransfield did not violate a clearly established right. *See Bradley,* 3 F.3d at 924 (no Section 504 violation when risk of transmission basis for dismissal). On the other hand, if it is established that Dr. Bransfield rejected plaintiffs applications based solely on an irrational distaste for HIV-positive applicants, Dr. Bransfield violated plaintiffs' clearly established rights under the Rehabilitation Act. *See Severino,* 935 F.2d at 1182 (noting that unjustified

consideration of HIV-positive status violates Section 504).

The complaint alleges only the most basic facts required to state a claim against Dr. Bransfield. However, the allegations of the complaint are not inconsistent with actions that constitute clearly identifiable violations of the Rehabilitation Act. Indeed, the complaint explicitly states that defendants' actions were willful and irrational. Complaint, ¶ 41. Accordingly, the court cannot dismiss the Section 504 claim against Dr. Bransfield on grounds of qualified immunity.[4]

## V. *Section 1983 And Equal Protection*

Plaintiffs claim that all defendants violated 42 U.S.C. § 1983 ("Section 1983"). Section 1983 provides, in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United State or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

 In order to establish a section 1983 claim, a plaintiff must allege (1) that plaintiff held a constitutionally protected right, (2) that plaintiff was deprived of this right in violation of the Constitution, (3) that defendants intentionally caused this deprivation, and (4) that defendants acted under color of state law. *See Patrick v. Jasper County*, 901 F.2d 561, 565 (7th Cir.1990). Plaintiffs allege that defendants' conduct violated their constitutionally protected right to equal protection of the laws.[5]

## A. *Equal Protection*

 The city contends that the section 1983 claim should be dismissed because plaintiffs fail to adequately allege a violation of equal protection. To allege an equal protection violation, a plaintiff must aver (1) that he or she is a member of a protected class, (2) that he or she is otherwise similarly situated to members of the unprotected class and (3) that he or she was treated differently from members of the unprotected class. *Sims v. Mulcahy*, 902 F.2d 524, 538 (7th Cir.), *cert. denied*, 498 U.S. 897, 111 S.Ct. 249, 112 L.Ed.2d 207 (1990). An equal protection claim must also allege that defendants acted with discriminatory intent. Discriminatory intent "implies that the decision maker ... selected or reaffirmed a particular course of action at least in part 'because,' not merely 'in spite of' its adverse affects upon an identifiable group." *Id.* (quoting *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979)).

 The plaintiffs allege that they belong to two "protected classes." On one hand, they belong to a class of persons tested for HIV by the police department. On the other, they belong to a class of persons denied employment as police officers because of their HIV-positive status. Plaintiffs also allege that they were physically and mentally fit to perform the duties of a police officer, but that they were nevertheless denied employment because of their HIV-positive status. This supports an inference that plaintiffs were treated differently than similarly-situated persons not tested for HIV or who tested HIV-negative.

The city argues that plaintiffs have failed to allege the requisite discriminatory intent. Plaintiffs allege that their removal from consideration as police officers was "irrational" and "based solely on vague, undifferentiated fears which are unsupported by medical or scientific evidence." Complaint, ¶ 41. The city contends that it is impossible to act both "irrationally" and with the intent to discriminate.

4. Because the complaint supports an inference that Dr. Bransfield violated a clearly-defined federal right, there is no need to address plaintiffs' further argument that Dr. Bransfield's actions were not "discretionary."

5. Plaintiffs' memoranda suggests that their Section 1983 claim also addresses violations of Section 504 of the Rehabilitation Act. Because defendants' objections to the Rehabilitation Act claims have already been addressed, the court shall not discuss Section 504 issues again in this section.

The city's argument is groundless. The complaint states that the decision to remove plaintiffs from consideration was "irrational" only insofar as it was not supported by medical or other reasons. It does not suggest that defendants acted without purpose. The allegation of irrationality therefore does not in any way contradict plaintiffs' allegation that "defendants acted knowingly and intentionally ... and with reckless and callous indifference to plaintiffs' rights." Accordingly, plaintiffs adequately allege intentional discrimination.

The city also contends that HIV-positive individuals cannot possibly be similarly situated to non-HIV positive individuals. In support of this argument, the city claims that federal disability laws, including Section 504 and the ADA, require that disabled individuals be treated differently. The city notes that these laws permit an employer to consider disability on a case-by-case basis; the city concludes that disability is a permissible factor in employment decisions.

This argument borders on the frivolous. The complaint does not allege that the city considered applicants on a case-by-case basis as required by Section 504 and the ADA. Instead, the complaint states that the city automatically disqualified applicants who tested positive for HIV. Differential treatment because of membership in a protected class violates the equal protection clause.

Finally, the city notes that the complaint seeks to represent a class of "all persons who have been, are, or will be candidates for the position of police officer with the Police Department." Complaint, ¶ 9. The city reasons that because the proposed class represents all applicants for positions as police officers, it is impossible to allege that this class received differential treatment.

The city misreads the complaint. The complaint subdivides the class identified for certification purposes into particular protected classes identified for equal protection analysis purposes. The protected classes identified by the complaint include (1) all those tested for HIV and (2) HIV-positive applicants. Complaint, ¶ 9A. The complaint supports the inference that members of these protected classes were treated differently than other similarly situated individuals—those who were not required to submit to HIV-testing and those who tested HIV-negative. Accordingly, the complaint adequately alleges the existence of identifiable protected classes receiving disparate treatment.

### B. *Color of State Law*

#### 1. *USOH*

 USOH urges that it cannot be found liable under section 1983 because it did not act under color of state law. Plaintiffs allege only that "[d]efendants City of Chicago, City of Chicago Department of Police and Dr. Bransfield acted under color of state law at all times relevant to the Complaint." Complaint, ¶ 44.

 Plaintiffs argue that the factual allegations of the complaint establish that USOH acted under color of state law. Private actors may be liable under section 1983 if they act in concert with a governmental body in violating constitutional rights. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970); *Rodriques v. Furtado*, 950 F.2d 805, 814 (1st Cir.1991). The determination of whether a private actor acted under color of state law depends on "whether there is a sufficiently close nexus between the State and the challenged action ... so that the action of the latter may be fairly treated as that of the State itself." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449, 454, 42 L.Ed.2d 477 (1974). The true nature of the state's involvement may not be immediately obvious, and requires a detailed inquiry into the facts of the relationship. *Id.*

Plaintiffs allege that USOH performed the HIV testing used by the city in its employment decisions. These allegations support a reasonable inference that USOH acted in concert with the city to violate plaintiffs' right to equal protection of the law. Accordingly, the complaint sufficiently alleges that USOH acted under color of state law.[6]

---

6. In its reply brief, USOH also asserts that plaintiffs fail to allege that USOH engaged in acts of

## 2. *The city*

■ The city asserts that it did not act under color of state law. The city argues that plaintiffs fail to establish any city custom, practice, or policy that supported treating HIV-positive applicants differently from other applicants.

Plaintiffs allege that on two separate occasions, applicants were rejected because of their HIV-positive status. The complaint also contains the explicit claim that defendants maintained a custom, practice, or policy of (1) testing candidates for HIV, (2) requiring a physical examination prior to providing candidates with a valid conditional offer of employment, and (3) discriminating against HIV positive applicants. Complaint, ¶ 10. Plaintiffs allege that defendants' actions stemmed from these customs, practices, and policies. *Id.*, ¶ 11.

■ Plaintiffs sufficiently allege the existence of a city policy, practice, or custom. Plaintiffs asserting Section 1983 claims, like all other plaintiffs, must simply provide sufficient notice of their claims, showing an entitlement to relief. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* —— U.S. ——, —— ——, 113 S.Ct. 1160, 1162–63, 122 L.Ed.2d 517 (1993). Section 1983 claims may not be subjected to a "heightened pleading standard" requiring plaintiffs to describe the policy, custom, or practice by particular factual allegations.

*Id.*[7] Plaintiffs' general allegations of city policy, practice, or custom suffice to allege that the city acted under color of state law.

■ The city also argues that neither Dr. Bransfield nor the Chicago police department is vested with the authority to make employment policy for the city. *See Limes–Miller v. Chicago,* 773 F.Supp. 1130, 1136 (N.D.Ill.1991). This is wholly irrelevant to plaintiffs' Section 1983 claims. Plaintiffs do not allege that either Dr. Bransfield or the police department established the alleged custom, practice, or policy on behalf of the city. Indeed, the defendants attribute the custom, practice, or policy to "one or more of the defendants," including the city. Accordingly, the role of Dr. Bransfield or the police department in setting city employment policy has no bearing on the city's motion to dismiss.[8]

## C. *Qualified Immunity*

■ Dr. Bransfield asserts that qualified immunity bars the Section 1983 claim against him. As already noted, qualified immunity does not apply if plaintiffs allege the violation of a clear federal right.

■ Plaintiffs allege that defendants, including Dr. Bransfield, discriminated against them because they are HIV-positive. Disabled persons are not a suspect class, and therefore are not entitled to the "strict scru-

---

purposeful discrimination in violation of the equal protection clause. This argument was not raised in either USOH's motion to dismiss or plaintiffs' response, and therefore is not properly presented in a reply brief. In any event, the complaint alleges that all defendants "maintained a custom of ... treating candidates differently in the hiring process because the have HIV disease." Complaint, ¶ 5. This allegation clearly alleges discrimination on the part of all defendants, including USOH.

7. Even under the "heightened pleading standard" employed prior to *Leatherman,* plaintiffs would state a claim. The allegations of discrimination on two separate occasions distinguishes this case from pre-*Leatherman* cases holding that allegations of a single constitutional violation did not provide a factual basis for inferring a municipal policy. *See, e.g., Rodgers v. Lincoln Towing Service, Inc.,* 771 F.2d 194, 202 (7th Cir.1985); *Strauss v. Chicago,* 760 F.2d 765, 769 (7th Cir. 1985).

8. In its motion to dismiss, the city originally cited city personnel rules forbidding discrimination against HIV-positive applicants for city positions. The city has since withdrawn all reference to its personnel rules. However, even if the court were to consider the rules, the existence of a codified policy of non-discrimination cannot refute plaintiffs' allegations as a matter of law. The Supreme Court has repeatedly recognized that a law or written policy may not embody the actual intentions of the municipality as demonstrated by the entrenched and well-settled practices of its officials. *See Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 737, 109 S.Ct. 2702, 2723, 105 L.Ed.2d 598 (1989); *Monell v. Department of Social Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). Insofar as plaintiffs allege that the city maintained discriminatory customs, practices, or policies, they allege that any written official policy does not embody the city's actual intentions.

tiny" equal protection analysis applied to classifications involving race or fundamental rights. *DeVargas v. Mason & Hanger–Silas Mason Co.*, 844 F.2d 714, 725 (10th Cir.1988); *California Ass'n of Physically Handicapped, Inc. v. FCC*, 721 F.2d 667, 670 (9th Cir.1983), *cert. denied*, 469 U.S. 832, 105 S.Ct. 121, 83 L.Ed.2d 63 (1984); *Brown v. Sibley*, 650 F.2d 760, 766 (5th Cir.1981).[9] The equal protection clause affords the disabled the right to be free from government classifications that are not rationally related to a legitimate government purpose. *See City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 446, 105 S.Ct. 3249, 3257, 87 L.Ed.2d 313 (1985); *Pontarelli Limousine, Inc. v. Chicago*, 929 F.2d 339, 341 (7th Cir.1991).

The complaint alleges that Dr. Bransfield discriminated against HIV-positive persons by refusing to consider their applications. The complaint specifically alleges that the removal of plaintiffs from the police officer eligibility lists was "irrational and based solely on vague, undifferentiated fears which are unsupported by medical or scientific evidence." Complaint, ¶ 42. The complaint thus alleges a classification of the disabled without a rational basis. The allegations of the complaint state a violation of plaintiffs' clearly established right to equal protection of the laws. Because the complaint alleges a violation of a clearly established right, Dr. Bransfield has not established that he is protected by qualified immunity on a motion to dismiss.[10]

### D. *Punitive Damages*

■■■ The city moves to strike the request for punitive damages. Punitive damages are not generally available under § 1983 against municipalities unless waived by federal or state law. *See Kolar v. County of Sangamon*, 756 F.2d 564, 567 (7th Cir.1985). Plaintiffs do not identify any waiver of the city's municipal immunity from punitive damages. Accordingly, the claim for punitive

damages against the city on the Section 1983 claim must be stricken.

### VI. *The Illinois AIDS Confidentiality Act*

Plaintiffs allege that defendants' failure to obtain plaintiffs' consent to HIV testing and failure to provide plaintiffs counseling in connection with the HIV test violated the Illinois AIDS Confidentiality Act ("IACA"), 410 ILCS 305/1 *et seq.* IACA prohibits any person from ordering an HIV test without first receiving the informed consent of the test subject. 410 ILCS 305/4. IACA also requires physicians ordering HIV testing to inform the test subject about the meaning of test results and to make available information regarding the availability of additional testing, further information, and counseling. 410 ILCS 305/5. IACA provides a civil right of action against any person negligently or intentionally violating IACA's provisions. 410 ILCS 305/13.

### A. *Subject Matter Jurisdiction*

■■■ Defendants move to dismiss the IACA claim for want of subject matter jurisdiction. In a case containing state and federal law claims, a district court may exercise supplemental jurisdiction over state law claims when the state claims "are so related to [the federal claims] that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. 1367(a). Defendants note that plaintiffs' federal claims require that the testing be performed with the intent to discriminate against plaintiffs on account of their disability. Plaintiffs' IACA claims, on the other hand, require plaintiffs to show that defendants did not provide proper counseling or obtain informed consent to the HIV tests. Defendants reason that because the IACA and federal claims involve different elements of proof, they are not part of the same case or controversy under Article III.

---

**9.** Plaintiffs claim that the ADA reflects Congressional intent that disability be considered a suspect class for equal protection purposes. The ADA contains a statement of findings and purposes indicating that the ADA was intended to remedy wide-ranging discrimination against the disabled. *See* 42 U.S.C. § 12101. However, the statement of findings and purposes makes no reference to the equal protection clause.

**10.** Of course, the entire qualified immunity issue may be revisited on a motion for summary judgment.

■ Defendants' argument is without merit. A state law claim is part of the same case or controversy for Article III purposes when the state and federal law claims arise from "a common nucleus of operative fact." *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). This common nucleus will generally exist if "considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding." *Id.*

Plaintiffs' IACA and federal claims arise from a common nucleus of operative fact. All claims arise from the same HIV testing. Plaintiffs' federal claims demand a determination of whether this testing violated Section 504 and the equal protection clause. Plaintiffs' IACA claims require the court to determine whether defendants complied with state law in performing the HIV testing. These are interrelated claims that should be tried in one judicial proceeding. *See Roe v. Little Co. of Mary Hospital,* 800 F.Supp. 620, 624 (N.D.Ill.1992) (state and federal claims related to single incident of HIV-transmission properly tried together). Accordingly, supplemental jurisdiction is appropriate.

■ Defendants contend that even if supplemental jurisdiction is otherwise appropriate, the court should refuse to exercise supplemental jurisdiction over the IACA claims because the claims present complex issues of state law. A federal court may decline to exercise supplemental jurisdiction over a state law claim if "the claim raises a novel or complex issue of State law." 28 U.S.C. § 1367(c)(1). Defendants note that IACA is a relatively new statute, and that few state courts have interpreted its provisions.

The issues presented by plaintiffs' IACA claims are not so novel or complex as to require denying jurisdiction. The IACA statutes are clear in their requirements. Moreover, the statutes are supplemented by fairly extensive regulations promulgated by the Illinois Department of Public Health pursuant to IACA. *See* 410 ILCS 305/16; Ill.Admin.Code, Title 77, § 697.10 *et seq.* Moreover, several cases have already interpreted IACA, providing a fairly comprehensive picture of the act's purposes. *See Connor v. Foster,* 833 F.Supp. 727 (N.D.Ill.1993); *Doe v. Burgos,* 265 Ill.App.3d 789, 202 Ill. Dec. 833, 638 N.E.2d 701 (1994); *In re Application of Multimedia KSDK, Inc.,* 221 Ill. App.3d 199, 163 Ill.Dec. 757, 581 N.E.2d 911 (1991). Accordingly, the complexity or novelty of the state law issues presented does not warrant declining supplemental jurisdiction.

### B. *Consent*

■ Dr. Bransfield and USOH assert that plaintiffs' consent to HIV testing precludes their IACA claims. The complaint indicates that plaintiffs submitted to a required physical examination. Complaint, ¶¶ 18, 27. However, the complaint does not allege that this submission constituted the informed consent to an HIV test required by IACA. 410 ILCS 305/4. Indeed, plaintiffs explicitly deny having given the required consent to HIV testing. Complaint, ¶¶ 18, 29. Accordingly, plaintiffs' submission to a physical examination is not a proper basis for dismissing the IACA claims.

### C. *Propriety of Defendants*

#### 1. *Dr. Bransfield and USOH*

■ Dr. Bransfield and USOH allege that plaintiffs do not state an IACA claim against them because plaintiffs fail to allege that either Dr. Bransfield or USOH "ordered" the HIV testing. Only a person ordering an HIV test is liable for failure to obtain informed consent. 410 ILCS 305/4. Only physicians ordering an HIV test are liable for failure to provide information on further testing or referrals for counseling. 410 ILCS 305/5.

This argument is without merit. Plaintiffs allege that USOH actually performed HIV-testing on them. Complaint, ¶¶ 18, 30. Plaintiffs allege that Dr. Bransfield informed John Doe of the test results. Complaint, ¶¶ 19. At the very least, these allegations raise a reasonable inference that either USOH, Dr. Bransfield, or both, ordered the HIV test performed. Accordingly, plaintiff states an IACA claim against both Dr. Bransfield and USOH.

### 2. *The city*

The city argues that it cannot be liable for failure to provide counseling because it is not a physician. IACA specifically requires that "no physician" order an HIV test without providing information about the meaning of the test results and the availability of counseling. 410 ILCS 305/5.

The city's argument is meritless. Plaintiffs allege that the HIV testing was performed at the city's direction. The city is generally liable for the acts or omissions of its employees. *See Luna v. Meinke*, 844 F.Supp. 1284, 1287 (N.D.Ill.1994). Nothing in IACA prohibits suit against the city on a *respondeat superior* theory. Indeed, IACA imposes liability for civil damages on any "person" who intentionally or negligently violates its provisions. 410 ILCS 305/13. Governmental entities are included within the definition of "person." 410 ILCS 305/3(h). Accordingly, there is no basis to dismiss the IACA claim against the city.

### D. *Immunity*

Dr. Bransfield alleges that he is immune from suit on the state law counts. Illinois law provides that a public employee exercising discretionary authority is immune from suit for abuse of that discretion. 745 ILCS 10/2–201. However, the immunity for discretionary acts does not extend to a public employee's willful or wanton acts. *Munizza v. Chicago*, 222 Ill.App.3d 50, 164 Ill.Dec. 645, 649, 583 N.E.2d 561, 565 (1991), *appeal denied*, 144 Ill.2d 635, 169 Ill.Dec. 144, 591 N.E.2d 24 (1992). Similarly, a public employee exercising executive authority is immune from suit for acts or omissions in the execution or enforcement of laws, provided that the acts or omissions are not willful or wanton. 745 ILCS 10/2–202.

Accepting the allegations of the complaint as true, as the court must on a motion to dismiss, Dr. Bransfield is not protected by immunity at this juncture. While plaintiffs' claims arise out of actions allegedly performed by Dr. Bransfield as a public employ-ee, plaintiffs specifically allege that he acted "willfully, wantonly, and with reckless and callous indifference to plaintiffs' rights." Complaint, ¶ 43. Dr. Bransfield contends that these allegations of willful and wanton conduct are insufficient absent a clear factual basis. However, the Federal Rules of Civil Procedure permit statements of motive or intent to be pleaded generally. *Triad Assocs. v. Robinson*, 10 F.3d 492, 497 (7th Cir.1993). Accordingly, Dr. Bransfield's assertion of state law immunity provides no basis for dismissing the IACA claim.[11]

### VII. *Intentional Infliction Of Emotional Distress*

### A. *Emotional Distress*

The complaint alleges that defendants have "intentionally, recklessly, and negligently inflicted significant emotional distress upon plaintiffs." Dr. Bransfield contends that plaintiffs fails to state an emotional distress claim under Illinois law.

A claim for intentional infliction of emotional distress requires (1) extreme and outrageous conduct by defendant (2) causing (3) severe emotional distress suffered by plaintiff. *Public Finance Corp. v. Davis*, 66 Ill.2d 85, 4 Ill.Dec. 652, 654, 360 N.E.2d 765, 767 (1976). Reckless conduct may support a cause of action if the actor knows emotional distress is certain or substantially certain to result from his action. *Id.* Negligent conduct may give rise to an emotional distress claim if the emotional distress resulted in a physical manifestation and if the distress resulted from breach of a duty defendant owed to plaintiff.

Dr. Bransfield asserts that the conduct alleged was not extreme or outrageous. Plaintiffs allege that defendants required them to submit to an HIV test, provided them with the results of a positive HIV test, and refused to further consider their applications for employment. Whether conduct is extreme or outrageous depends largely on particular circumstances, including the

---

**11.** The city argues that it is immune from suit on the IACA claim because Dr. Bransfield is immune from suit. *See* 745 ILCS 10/2–109 (exempting public entity from liability where employee not liable). This argument is moot.

degree of power or authority that defendants exercised over plaintiffs. *See McGrath v. Fahey,* 126 Ill.2d 78, 127 Ill.Dec. 724, 727, 533 N.E.2d 806, 809 (1988). The complaint's allegations are not inconsistent with extreme or outrageous conduct. The court therefore cannot resolve this issue on a motion to dismiss.

 Dr. Bransfield also alleges that he owed no duty to plaintiffs, and thus a claim of negligent infliction of emotional distress is impossible. However, IACA appears to impose various duties on physicians conducting HIV testing. Insofar as plaintiffs assert that IACA violations caused them emotional distress, the distress resulted from breach of a duty imposed by law. Accordingly, plaintiffs' claim for negligent infliction of emotional distress cannot be dismissed.

### B. *Punitive Damages*

Dr. Bransfield and the city move to strike plaintiffs' request for punitive damages in conjunction with the IACA and emotional distress claims. Illinois state law provides that municipalities and public officials are not liable for punitive damages. 745 ILCS 10/2–102. Plaintiffs do not dispute that punitive damages are unavailable. Accordingly, the request for punitive damages is stricken as to plaintiffs' state law claims.

### CONCLUSION

In summary, the court's disposition of defendants' motions to dismiss is as follows:

(1) Defendants City of Chicago, Dr. James J. Bransfield, and United States Occupational Health's motions to dismiss the Americans with Disabilities Act claims are moot.

(2) Defendant City of Chicago's motion to dismiss the claims against the City of Chicago Police Department is granted.

(3) Defendant City of Chicago's motion to strike the claims for punitive damages against the city under 42 U.S.C. § 1983, the Illinois AIDS Confidentiality Act, and the Illinois emotional distress claim is granted.

(4) Defendant Dr. James J. Bransfield's motion to strike the claim for punitive damages against him under the Illinois AIDS Confidentiality Act and the Illinois emotional distress claim is granted.

(5) Defendants' motions to dismiss are denied in all other respects. The defendants are directed to answer all surviving claims by December 1, 1994.