Rosalie GLANZ, executrix of the estate of Raymond Vadnais, Plaintiff,

v.

Dr. David M. VERNICK, Dr. Michael Miller, Beth Israel Corporation, and Beth Israel Hospital, Defendants.

Civ. A. No. 89–0748–MA.

United States District Court, D. Massachusetts.

Feb. 5, 1991.

Harvey A. Schwartz, Schwartz, Shaw & Griffith, Boston, Mass., for plaintiff.

Claudia Hunter, Bloom and Buell, Boston, Mass., for defendants.

## MEMORANDUM AND ORDER

MAZZONE, District Judge.

In April, 1989, plaintiff's decedent, Raymond Vadnais, brought this suit alleging discrimination in violation of § 504 of the Rehabilitation Act of 1973 (the "Act"), 29 U.S.C. § 794, along with two state-law claims. Mr. Vadnais claimed that defendant Dr. Vernick, a staff member at Beth Israel Hospital, refused to perform elective ear surgery on him because Mr. Vadnais had tested positive for Human Immunodeficiency Virus (HIV), associated with Acquired Immune Deficiency Syndrome (AIDS). Mr. Vadnais claimed to have suffered severe pain in his right ear, which pain was prolonged because of the defendants' failure to perform surgery and disappeared only when surgery was performed elsewhere.

On March 14, 1990, Mr. Vadnais died of AIDS-related illnesses. The motion of plaintiff, executor of the estate of Mr. Vadnais, to be substituted as a party plaintiff pursuant to Fed.R.Civ.P. 25(a)(1) was allowed. Prior to Mr. Vadnais's death, defendants had filed motions for summary judgment. Those motions were stayed to allow defendants to file a motion to dismiss on the ground that the federal cause of action abated with Mr. Vadnais's death. That motion was denied in part, and the executor was allowed to maintain this suit to seek compensatory, but not punitive, damages. *Glanz v. Vernick*, 750 F.Supp. 39 (D.Mass.1990). The case is now before me on the summary judgment motions.

I

The allegations in the complaint can be briefly summarized as follows. In December, 1986, defendant Dr. Vernick saw Mr. Vadnais at the Ear, Nose, and Throat Clinic (the "ENT Clinic") at Beth Israel Hospital and treated him for severe pain in the right ear, at first by prescribing antibiotics and ear drops. In January, 1987, Dr. Vernick diagnosed a perforation in Mr. Vadnais's right ear and, at Mr. Vadnais's third visit, recommended surgery to repair the perforation. After Mr. Vadnais agreed to undergo surgery, Dr. Vernick learned that Mr. Vadnais was infected with HIV and in March, 1987, informed Mr. Vadnais that he would not perform the operation. The ear condition persisted, causing severe pain and discomfort, while Mr. Vadnais continued the ineffective use of antibiotics and ear drops.

In August, 1988, Dr. Yale Berry, unaware of Mr. Vadnais's HIV status, performed the surgery, curing Mr. Vadnais's ear problem. Subsequently, Mr. Vadnais brought this lawsuit seeking to enjoin defendants from denying him any further surgical procedures. Mr. Vadnais also sought compensatory damages for the pain and suffering and emotional distress caused by the delay in receiving corrective surgery, along with punitive damages and attorney's fees. As mentioned above, only the action for compensatory damages survived Mr. Vadnais's death.

II

Count I of the complaint charges that Dr. Vernick, Beth Israel Hospital, and Beth

Israel Corporation (the latter two hereinafter referred to collectively as "Beth Israel"), by refusing to perform surgery, unlawfully discriminated against Mr. Vadnais because of his handicap, HIV seropositivity, in violation of § 504 of the Rehabilitation Act. Count II alleges a separate violation of § 504 against the Beth Israel defendants for failure "to adequately educate, train and supervise" staff regarding HIV and AIDS infection. Amended Complaint ¶ 88.

Section 504 states in pertinent part that "[n]o otherwise qualified handicapped individual in the United States ... shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." 29 U.S.C. § 794.

The defendants do not dispute that HIV-positive status is a "handicap" within the meaning of the Act. In fact, several district courts and the Department of Justice have found that it does qualify. *See Leckelt v. Board of Comm'rs of Hosp. Dist. No. 1*, 714 F.Supp. 1377, 1385 n. 4 (E.D.La.1989), *aff'd*, 909 F.2d 820 (5th Cir. 1990). Nor do defendants contest that a private cause of action for compensatory damages is available under § 504. While the First Circuit has never squarely addressed the issue, *see Hurry v. Jones*, 734 F.2d 879, 886 (1st Cir.1984) (finding no need to reach the question); *Ciampa v. Massachusetts Rehabilitation Comm'n*, 718 F.2d 1 (1st Cir.1983) (assuming without deciding that damages are available under § 504), there is ample authority for the conclusion that compensatory damages are available. *See Miener v. Missouri*, 673 F.2d 969, 973–74 (8th Cir.) (collecting cases finding an implied right of action under § 504), *cert. denied*, 459 U.S. 909, 103 S.Ct. 215, 74 L.Ed.2d 171 (1982); *see also Gelman v. Department of Educ.*, 544 F.Supp. 651 (D.Colo.1982) (concluding that compensatory damages, but not punitive damages, are available under § 504).

Rather, the defendants argue that summary judgment is appropriate for several other reasons. Dr. Vernick argues that summary judgment should be allowed in his favor because Mr. Vadnais was not "otherwise qualified" for surgery, as required by § 504, and because Dr. Vernick does not "receiv[e] Federal financial assistance." The Beth Israel defendants argue as to Count I that they never treated the patient, had no control over Dr. Vernick's medical decisions, and cannot be held vicariously liable for his actions. As to Count II, they argue that there is no liability under § 504 for failure to train.

Summary judgment may be granted to a moving party if there is "no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The facts must be viewed in the light most favorable to the non-moving party. *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990). Summary judgment cannot be issued if there exist any factual issues that need to be decided before the legal issues can be. *Rossy v. Roche Prods., Inc.*, 880 F.2d 621, 624 (1st Cir.1989).

A. *"Receiving Federal Financial Assistance"*

Plaintiff contends that Beth Israel is a "program or activity receiving Federal financial assistance" within the meaning of § 504 by virtue of the fact that it receives Medicare and Medicaid payments. The Act defines "program or activity" as "an entire corporation, partnership, or other private organization, or entire sole proprietorship— ... (ii) which is principally engaged in the business of providing ... health care...." 29 U.S.C. § 794(b)(3)(A). Beth Israel's ENT Clinic is clearly a "program or activity" as defined in this provision. Whether such a program qualifies as "receiving Federal financial assistance" within the meaning of § 504 solely because its medical services are paid for by Medicaid presents a pure question of law. The parties cite only once case that has met this issue head on. In *United States v. Baylor Univ. Medical Center*, 736 F.2d 1039 (5th Cir.1984), *cert. denied*, 469 U.S. 1189, 105 S.Ct. 958, 83 L.Ed.2d 964 (1985),

the Fifth Circuit held that the receipt of Medicare and Medicaid payments by a hospital triggered the coverage of § 504. The Fifth Circuit found that legislative history establishes conclusively that Medicare and Medicaid were intended to constitute federal financial assistance for the purposes of Title VI, and that the scope and effect of § 504 were intended to be identical to those of Title VI. *Id.* at 1042–45. The Fifth Circuit also noted that this result accords with longstanding Department of Health and Human Services interpretation of § 504, *id.* at 1047, and is equally compelled by the Supreme Court's decision in *Grove City College v. Bell*, 465 U.S. 555, 104 S.Ct. 1211, 79 L.Ed.2d 516 (1984). *Baylor Univ.*, 736 F.2d at 1046. I agree with the Fifth Circuit's reasoning and hold that a hospital's receipt of Medicare or Medicaid payments for its services qualifies as receiving federal financial assistance within the meaning of § 504.

■ It is undisputed that Mr. Vadnais presented himself to the ENT Clinic and that the Clinic referred him to Dr. Vernick, a staff physician. Beth Israel, not Dr. Vernick, billed Mr. Vadnais for the services provided at the ENT Clinic, and Beth Israel received Medicaid reimbursement for those services. Thus, summary judgment for the defendants cannot be granted on the ground that the alleged discrimination did not occur in a program receiving federal assistance.

■ Defendants also assert that the alleged discrimination did not occur in a federally funded program because the procedure that Mr. Vadnais underwent was an elective procedure, and elective surgery is not covered by Medicaid. Whether the particular procedure is covered, however, is irrelevant. If the ENT Clinic is a program or activity for the purposes of § 504, then it cannot discriminate against any handicapped individuals, regardless of whether they receive Medicaid benefits or not. *Grove City College*, 465 U.S. at 571 n. 21, 104 S.Ct. at 1220 n. 21; *Baylor Univ.*, 736 F.2d at 1047–48.

■ Beth Israel further argues that, despite the fact that Mr. Vadnais was a patient of the hospital, that the hospital billed him, and that it received Medicaid payments for the treatment he received at the ENT Clinic, Mr. Vadnais was Dr. Vernick's patient, not Beth Israel's. Beth Israel cites Massachusetts case law for the proposition that a hospital cannot be held liable for the actions of its doctors. The cited cases, however, establish that a hospital can be vicariously liable for the actions of its doctors—the question of liability is simply decided under the principles of agency law. The test for vicarious liability is whether the hospital exercised any power or control over the professional conduct of the treating physician. *Kelley v. Rossi*, 395 Mass. 659, 662, 481 N.E.2d 1340, 1342–43 (1985); *Kapp v. Ballantine*, 380 Mass. 186, 195, 402 N.E.2d 463, 469 (1980).

The plaintiff has presented evidence that, with regard to treatment of HIV-positive and AIDS patients, the hospital does exercise control over its physicians. The hospital employs an "AIDS coordinator," Dr. Cotton, who testified in her deposition that the hospital staff has "very clear directives" not to refuse care to AIDS patients. Once alerted to Mr. Vadnais's medical record, Dr. Cotton in fact contacted Dr. Vernick to determine whether he had improperly refused treatment to Mr. Vadnais. Moreover, the facts that the hospital does the billing and that Dr. Vernick receives a salary from the hospital for resident teaching tend to reinforce the conclusion that he was a hospital employee, rather than an independent contractor, at least for the purposes of treating Mr. Vadnais. This factual evidence is enough to preclude summary judgment on the ground that the hospital is not liable for Dr. Vernick's actions.

■ Moreover, the courts that have considered the question have determined that vicarious liability is appropriate in an action brought under § 504. *Bonner v. Lewis*, 857 F.2d 559, 566–67 (9th Cir.1988); *Patton v. Dumpson*, 498 F.Supp. 933, 942–44 (S.D. N.Y.1980). In addition to noting that *respondeat superior* is consistent with the regulations promulgated under § 504, the district court in *Patton* enunciated strong

policy reasons for its decision to permit vicarious liability:

> The application of *respondeat superior* to § 504 suits would be entirely consistent with the policy of that statute, which is to eliminate discrimination against the handicapped. The justification for imposing vicarious liability on employers for the acts of their employees is well-known. It creates an incentive for the employer to exercise special care in the selection, instruction and supervision of his employees, thereby reducing the risk of accidents. In the absence of a Congressional directive to the contrary, this court can assume only that Congress intended the judiciary to use every available tool to eliminate discrimination against the handicapped in federally funded programs.

*Id.* at 943. Thus, it is appropriate to hold Beth Israel responsible for the actions of its medical staff in complying with the Rehabilitation Act, even without a finding of power or control.

The question still remains whether Dr. Vernick himself can be held liable for allegedly discriminating against Mr. Vadnais in Beth Israel's federally funded program. The plaintiff argues that the doctor should be held liable because he conducts a personal medical practice in which he treats Medicare and Medicaid patients—sometimes at Beth Israel Hospital—and bills them through his personal Medicare provider number.

The Supreme Court's decision in *Grove City College* indicates that application of the anti-discrimination provisions of civil rights legislation for programs receiving federal financial assistance must be program-specific. In *Grove City College* the Court held that because of its participation in the BEOG program, the college's financial aid program—but not the entire institution—was subject to the provisions of Title IX. The application of § 504 in this case must thus be limited to the relevant program receiving federal funds in the form of Medicare or Medicaid payments. Dr. Vernick participates in at least two distinct "programs": his private medical practice, in which he personally receives federal funds for treating some patients, and Beth Israel's ENT Clinic, in which he is employed in a resident teaching capacity. The latter is the relevant program in the case at bar.

If Dr. Vernick is to be held personally liable in this case, then, it must be solely on the basis of his participation in Beth Israel's federally funded program. Dr. Vernick relies on *United States Dep't of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597, 106 S.Ct. 2705, 91 L.Ed.2d 494 (1986), for the proposition that § 504 applies only to those who actually "receive" federal funds, whether directly or indirectly, rather than those who are merely intended beneficiaries. *Id.* at 606–07, 106 S.Ct. at 2711. In distinguishing between airport operators, which receive federal assistance, and commercial airlines, which merely benefit from the effects of such assistance, the Court in *Paralyzed Veterans* stressed the contractual nature of the Rehabilitation Act: "By limiting coverage to recipients, Congress imposes the obligations of § 504 upon those who are in a position to accept or reject those obligations as part of the decision whether or not to 'receive' federal funds." *Id.* at 606, 106 S.Ct. at 2711.

In his resident teaching position at Beth Israel, Dr. Vernick clearly is not in a position to accept or reject federal assistance. While it can be argued that Dr. Vernick can elect not to work at Beth Israel, he cannot be held to the requirements of § 504 for choosing to work at a federally funded hospital any more than a commercial airline can be subjected to its provisions for choosing to operate out of federally funded airports. Accordingly, Dr. Vernick cannot be held liable under the Act for his participation in Beth Israel's federally funded program.

As to Count II of the complaint, Beth Israel is correct to assert that nothing in the Rehabilitation Act indicates that § 504 imposes liability for "failure to train," and the plaintiff has produced no authority to the contrary. Moreover, given my decision that Beth Israel can be held

directly liable under § 504 for the acts of its employees, liability for failure to train them is superfluous.

### B. *"Otherwise Qualified"*

■ The defendants also base their motion for summary judgment on the ground that Mr. Vadnais was not "otherwise qualified" for elective ear surgery. They argue that it is proper for a doctor to consider a patient's handicap in determining whether a patient is qualified for surgery. On the basis of this argument, they conclude that Mr. Vadnais was not "otherwise qualified" for surgery because his HIV disease increased his risk of infection, and, furthermore, that the court should defer to the doctor's determination that it was in his patient's best interest to postpone surgery.

■ The defendants cannot be faulted for considering Mr. Vadnais's handicap in determining whether he was "otherwise qualified" for surgery. In *School Bd. v. Arline*, 480 U.S. 273, 287–89, 107 S.Ct. 1123, 1130–31, 94 L.Ed.2d 307 (1987), the Supreme Court held that the defendant school board could consider the risks posed by the plaintiff's contagious disease (tuberculosis) in determining whether she was otherwise qualified to teach school. It follows that, in the present case, the defendants can take into account the risks imposed—both on the patient and on themselves—by the prospect of surgery on an HIV-positive patient. Of course, if they properly conclude that there are risks, they must also consider whether it is possible to make reasonable accommodations to enable the patient to undergo surgery despite those risks. *See Id.* at 287–88 & n. 17, 107 S.Ct. at 1130–31 & n. 17.

■ As the Court made clear in *Arline*, the "otherwise qualified" determination requires an individualized inquiry and appropriate findings of fact. *Id.* at 287, 107 S.Ct. at 1130. With respect to the defendants' assertions about the risks of surgery, the facts are in dispute. The defendants contend that surgery was postponed because Dr. Vernick thought that Mr. Vadnais was "AIDS positive," because the proposed ear surgery was elective, and because it would pose significant risks to the patient. In addition, they offer Dr. Berry's statement in his deposition that he would not have performed the surgery had he known that Mr. Vadnais had AIDS. The plaintiff offers the contradicting evidence that Mr. Vadnais was HIV-positive and had not yet been diagnosed as having AIDS when surgery was refused. Moreover, Dr. Vernick in answers to interrogatories and Dr. Berry in his deposition stated that they do not consider HIV seropositivity alone as a disqualifying factor for surgery. Based on the evidence that the plaintiff has produced, facts are certainly available to warrant the conclusion that Mr. Vadnais was "otherwise qualified" for surgery. Moreover, the defendants have not produced any evidence that reasonable accommodations could not have been made.

■ There is some merit to the argument that the court should defer to a doctor's medical judgment. *Cf. Arline*, 480 U.S. at 288, 107 S.Ct. at 1131 ("courts normally should defer to the reasonable medical judgments of public health officials" when conducting "otherwise qualified" inquiry). Accepting this argument at face value, however, would completely eviscerate § 504's function of preventing discrimination against the disabled in the health-care context. A strict rule of deference would enable doctors to offer merely pretextual medical opinions to cover up discriminatory decisions. The evidentiary approach to § 504 cases discussed in *Pushkin v. Regents of the Univ. of Colo.*, 658 F.2d 1372 (10th Cir.1981), properly balances deference to sound medical opinions with the need to detect discriminatory motives. The plaintiff must first make out a *prima facie* case that he was otherwise qualified for surgery, and only then does the burden shift to the defendant to show that the plaintiff's handicap made him unqualified. *Id.* at 1387; *Leckelt*, 714 F.Supp. at 1385. The plaintiff, however, must still be given an opportunity "to prove either that the reason given by defendants is a pretext or that the reason ... 'encompasses *unjustified* consideration of the handicap itself.' "

*Id.* at 1385 (citing *Pushkin*, 658 F.2d at 1387) (emphasis added).

In sum, because the receipt of Medicare and Medicaid payments brings Beth Israel's ENT Clinic within the scope of § 504, and because there are genuine issues of material fact surrounding the "otherwise qualified" inquiry, summary judgment on the § 504 claim is inappropriate.

## III

Count III of the complaint alleges a violation of the Massachusetts Civil Rights Act, Mass.Gen.Laws ch. 12, § 11*I*, against Dr. Michael Miller, another Beth Israel doctor, who treated Mr. Vadnais for his HIV illness. The plaintiff alleges that, when told that Mr. Vadnais had scheduled ear surgery at the Massachusetts Eye and Ear Infirmary, Dr. Miller threatened to disclose Mr. Vadnais's HIV-positive status to the prospective surgeon. In Massachusetts, health-care providers are prohibited from disclosing patients' HIV status without first obtaining specific consent from the patient for *each* .requested release. Mass. Gen.Laws ch. 111, § 70F. Plaintiff seeks money damages under the Civil Rights Act for Dr. Miller's alleged interference with Mr. Vadnais's "right not to reveal his HIV status." Amended Complaint ¶ 92. Count IV presses a cause of action against the Beth Israel defendants directly under ch. 111, § 70F, for permitting unauthorized disclosure of decedent's medical records.

 The only basis for this court's entertaining these state-law claims is its power to assume pendent jurisdiction over claims that "derive from a common nucleus of operative fact" with the federal claims that are properly before the court. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Of course, the fact that judicial power to hear state-law claims exists does not require the court to exercise jurisdiction. While the defendants have not objected to this court's assumption of jurisdiction, on the facts and issues before me, I find that there are more reasons than not to refrain from the exercise of that power.

First, the state-law claims at issue here present novel questions of state law on which the state courts have not yet had much opportunity to comment. Rather than speculate on how the Massachusetts courts would likely treat the relationship of the HIV confidentiality statute to the Civil Rights Act, it would be preferable to permit the state courts to decide these issues in the first instance.

Second, while the facts giving rise to the state-law claims are related to those giving rise to the federal claim, the two incidents were separate and would not appear to involve much, if any, overlapping testimony. Thus, the interests in judicial economy, convenience, and fairness to the litigants that often justify pendent jurisdiction are not strongly implicated here.

Third, Dr. Miller, the principal defendant in these state-law claims, is not named in any claim that is independently cognizable in federal court. To decide the claim against him would require the court to assume pendent-*party* jurisdiction. Recent Supreme Court decisions indicate that assumption of pendent-party jurisdiction requires a searching analysis of the jurisdictional statute on which the case is based, and that for this purpose, jurisdictional statutes are to be narrowly construed. *See Finley v. United States*, 490 U.S. 545, 549–50, 109 S.Ct. 2003, 2006–07, 104 L.Ed.2d 593 (1989).

Finally, the dismissal of these state-law claims would not prejudice the plaintiff, as the statute of limitations has not yet run on either claim. The events that are the alleged basis for liability took place in January, 1988. The statute of limitations for civil rights claims is three years, Mass.Gen. Laws ch. 260, § 5B, while the applicable limitation for a suit commenced under the confidentiality statute is four years. *Id.* § 5A. Neither had elapsed when Mr. Vadnais died in March, 1990; thus, the plaintiff executrix has until March, 1992, to commence this action for the benefit of the decedent's estate. *Id.* § 10.

For the reasons stated above, I will dismiss these state-law claims without preju-

dice so that they can be brought in the more appropriate forum.

### ORDER

The summary judgment motion of Beth Israel Hospital and Beth Israel Corporation is DENIED with respect to Count I and ALLOWED with respect to Count II. Defendant Dr. Vernick's motion for summary judgment is ALLOWED. Counts III and IV are DISMISSED without prejudice.

Because there is no longer any just reason to retain him as a party in this case, Fed.R.Civ.P. 54(b), judgment is entered in favor of defendant Dr. Miller. This dismissal is without prejudice to the plaintiff's state-law claims.