**Dionne SUMES, Plaintiff,**

**v.**

**Dr. Pepito ANDRES, Defendant.**

**Civil Action No. 94–1796 (HHG).**

United States District Court,
District of Columbia.

July 9, 1996.

Seymour Dobow, National Center for Law & Deafness, Washington, DC, for Dionne Sumes.

Brian S. Harvey, Lee T. Ellis, Jr., Washington, DC, for Pepito Andres.

## OPINION

HAROLD H. GREENE, District Judge.

This case came before the Court for a bench trial beginning on February 20, 1996 and concluding on February 21, 1996. With the benefit of the full record now before the Court, including Proposed Findings of Facts and Conclusions of Law filed by both plaintiff and defendant, this case is ripe for a decision on the merits.

I

This case involves claims under the section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the D.C. Human Rights Act ("DCHRA"), D.C.Code § 1–2519.[1] Because the parties sharply contest the factual background of this case, the Court will briefly outline each side's version of the facts.

Plaintiff is a deaf woman who was pregnant at the time relevant to the instant action. Plaintiff visited the office of defendant, an obstetrician, seeking prenatal care. During the visit, plaintiff was accompanied by her mother, who was interpreting for her. Plaintiff asserts that as soon as defendant walked into the examining room and was told

---

1. Plaintiff's request for injunctive relief—which included a claim under the Americans with Disabilities Act, 42 U.S.C. §§ 12181–12189—was resolved on summary judgment. Both parties waived their right to a jury trial and therefore, the trial was presented to the bench.

by plaintiff's mother that plaintiff was deaf, he stepped back and said "all deaf people are high risk," refused to treat plaintiff, and said that she should go to a high risk center. According to plaintiff, plaintiff's mother then told defendant that plaintiff was not feeling well and might have a fever, and inquired if he could examine her briefly and stabilize her if necessary before they went to another center. Defendant refused and left the room. Plaintiff maintains that defendant never asked about her health or medical history, and did not perform an examination at any time.

According to defendant, his practice is limited to low risk patients. He will not treat individuals who have symptoms such as fever and nausea unless such an individual is a prior patient of his. Plaintiff was not a prior patient of his, and according to defendant, she had never previously seen a obstetrician or gynecologist. Defendant maintains that he referred plaintiff to a high risk center after plaintiff's mother had told him that plaintiff was not feeling well and had been feverish. He testified that he was also concerned that her deafness might be the result of some underlying congenital condition that he did not feel qualified to evaluate. He thus maintains that the reason he did not treat plaintiff is because she appeared to be suffering from a medical condition that was outside of the area of his specialty. He points to the fact that plaintiff was in fact suffering from another condition—when she went to a hospital after defendant declined to treat her, she was diagnosed with a kidney infection. He also notes that her deafness is a result of a congenital condition, Waardenburg Syndrome. However, he concedes that he was not aware of the fact that plaintiff suffered from this condition until the present lawsuit was initiated.

The parties have stipulated to the following facts: (1) that plaintiff is a "disabled person" as defined by the Rehabilitation Act and has a "disability" as defined by the D.C. Human Rights Act; (2) defendant receives "federal financial assistance" through the Medicaid program and thus is subject to the Rehabilitation Act; and (3) at the time of plaintiff's visit to defendant's office, she was one to two months pregnant.

## II

### A.

To prevail on the Rehabilitation Act claim, plaintiff must show: (a) she is a disabled person, (b) she was "otherwise qualified" to receive treatment from defendant, (c) defendant refused to treat her "solely by reason of" her disability, and (d) defendant receives federal financial assistance. *Johnson v. Thompson*, 971 F.2d 1487, 1492 (10th Cir.1992), *cert. denied*, 507 U.S. 910, 113 S.Ct. 1255, 122 L.Ed.2d 654 (1993). In light of the parties' stipulations, the issues for the Court to resolve are whether plaintiff was "otherwise qualified" to receive treatment from defendant and whether defendant refused to treat plaintiff "solely by reason of" her disability.

Under the Rehabilitation Act, an individual is "qualified" to receive services if she "meets the essential eligibility requirements for the receipt of such services." 45 C.F.R. § 84.3(k). In the provision of medical services, the issue becomes whether "there is no factor apart from the mere existence of disability that renders that participant unqualified for the [services]." *Woolfolk v. Duncan*, 872 F.Supp. 1381, 1389 (E.D.Pa.1995) (footnote omitted).

A health care provider may consider any genuine medical risks associated with plaintiff's disability, but he "must also consider whether it is possible to make reasonable accommodations to enable the patient to [be treated] despite those risks." *Glanz v. Vernick*, 756 F.Supp. 632, 638 (D.Mass.1991). Accordingly, a provider "may not withhold medical benefits, without reasonable accommodation, *solely* based on a participant's disability, but may only act pursuant to a *bona fide* medical reason." *Woolfolk*, 872 F.Supp. at 1390.

Plaintiff must first make a prima facie showing that she was otherwise qualified to be treated; the burden then shifts to defendant to show that plaintiff was not in fact qualified. *Glanz*, 756 F.Supp. at 638.

Generally, when undertaking an "otherwise qualified" inquiry, "courts should normally defer to the reasonable medical judgments of public health officials." *School Board v. Arline*, 480 U.S. 273, 288, 107 S.Ct. 1123, 1131, 94 L.Ed.2d 307 (1987); *see Glanz*, 756 F.Supp. at 638. However, "[a] strict rule of deference would enable doctors to offer merely pretextual medical opinions to cover up discriminatory decisions." *Glanz*, 756 F.Supp. at 638. Thus, a plaintiff may prevail if she can show that the reason given by defendant is a pretext or that it "encompasses unjustified consideration of the handicap itself." *Id.* (internal citations omitted).

■ The Court finds that plaintiff visited the office of defendant while she was pregnant, and thus was qualified to receive prenatal care. The Court finds nothing about her disability that would disqualify her from receiving such care from defendant. Nor was she suffering from any other condition that would preclude defendant from treating her.[2] Therefore, the Court finds that plaintiff was "otherwise qualified" within the meaning of the Rehabilitation Act.

■ The Court also finds that defendant refused to treat plaintiff solely by reason of her disability. The Court credits the evidence presented by plaintiff that immediately upon learning she was deaf, defendant refused to treat her. The Court finds that defendant made such a refusal before he learned that plaintiff was suffering from a fever and before he questioned plaintiff about her medical or family history. To the extent that plaintiff may have been sweating or shivering, the Court finds that defendant's failure to take her temperature or to ask her any questions about her illness undermines any claim that the reason he refused to treat her was because he believed she was suffer-

ing from a condition that he was not qualified to treat. *See* note 2, *supra.* Furthermore, the fact that she was later diagnosed with a kidney infection is irrelevant, because defendant had no knowledge of that condition when he refused to treat her. Nor could he have had such knowledge because of his failure to ask her any questions about her symptoms or medical history. The Court finds that he had no "*bona fide* medical reason" for refusing to treat plaintiff, *Woolfolk*, 872 F.Supp. at 1390, and thus concludes that the sole reason defendant refused to treat her was because she was deaf.[3] Accordingly, the Court finds in favor of plaintiff on the Rehabilitation Act claim.

### B.

A claim under the DCHRA requires proof that (a) plaintiff has a disability, (b) defendant denied her "goods, services, facilities, privileges, advantages, [or] accommodations", and (c) defendant did so "wholly or partially for a discriminatory reason." D.C.Code § 1–2519(a) (1981 & Supp.1995). In light of the parties' stipulations, the issues to be resolved are whether defendant denied plaintiff "goods, services, facilities, privileges, advantages, [or] accommodations" and whether defendant did so "wholly or partially for a discriminatory reason."

■ In determining whether a defendant acted for a discriminatory reason, the analysis for Title VII discrimination claims is applicable to claims brought under the DCHRA. *RAP, Inc. v. District of Columbia Comm'n on Human Rights*, 485 A.2d 173, 176 (D.C.1984). Accordingly, the plaintiff must first prove by a preponderance of the evidence a prima facie case of discrimination, which "raises a presumption that the [defen-

---

2. The Court rejects defendant's assertion that plaintiff was not qualified to receive services from him because she appeared to be suffering from a fever or because she was later diagnosed with a kidney infection. First of all, the Court finds that defendant had no way of knowing if plaintiff was in fact suffering from a fever or any other condition because he failed to take her temperature or ask her any questions about her symptoms. Furthermore, the Court credits plaintiff's expert testimony that there is nothing about a fever that necessarily indicates that a

woman's pregnancy is "high risk." Similarly, plaintiff's kidney infection, of which defendant was unaware at the time of her visit, would not preclude defendant from taking plaintiff's history and at least making a preliminary assessment of her condition before referring her elsewhere.

3. The fact that he provided substandard care to her and refused to refer her elsewhere also supports a finding of discrimination. *See Woolfolk*, 872 F.Supp. at 1388 n. 7, 1390 n. 15.

dant]'s action, if otherwise unexplained, was more likely than not based on a consideration of impermissible factors." *Id.* The burden then shifts to the defendant to raise a genuine issue of fact as to whether he discriminated against plaintiff, by showing a "legitimate, nondiscriminatory reason" for his actions. *Id.* Finally, plaintiff must show that the defendant's proffered reason was a pretext "either directly by persuading the court that a discriminatory reason more likely motivated the [defendant] or indirectly by showing that the [defendant]'s proffered explanation is unworthy of credence." *Id.* (internal citation omitted).

■ Defendant unquestionably denied plaintiff "services" when he refused to treat her. The Court must therefore determine whether he did so "wholly or partially for a discriminatory reason." This analysis is quite similar to that undertaken by the Court on the Rehabilitation Act claim. For the reasons that the Court found that defendant refused to treat plaintiff "solely by reason of" her disability on that claim, the Court finds that plaintiff presented sufficient evidence to establish a prima facie case that defendant violated the DCHRA. The burden then shifts to defendant to show that he had a legitimate non-discriminatory reason for refusing to treat plaintiff. The Court finds that defendant has shown none because he failed to learn anything about plaintiff's medical history before he refused to treat her.[4] Therefore, the Court also finds in favor of the plaintiff on the DCHRA claim.

### C.

The remaining issue for the Court to resolve is the amount of damages that should be awarded to plaintiff. After plaintiff left the defendant's office, she proceeded directly to the emergency room where she received

the necessary attention for what was later diagnosed as a kidney infection. Thus, plaintiff suffered no physical or medical injury from defendant's refusal to treat her.

■ However, plaintiff may recover compensatory damages for humiliation, embarrassment, and emotional pain and suffering under both statutes. *Doe v. District of Columbia,* 796 F.Supp. 559, 572–73 (D.D.C. 1992) (Rehabilitation Act); *Doe v. District of Columbia Comm'n on Human Rights,* 624 A.2d 440, 447–48 (D.C.1993) (DCHRA). A finding of humiliation and embarrassment flows naturally from a finding of discrimination. *Doe,* 624 A.2d at 447; *see Johnson v. Hale,* 940 F.2d 1192, 1193 (9th Cir.1991) (per curiam).

■ Plaintiff testified that defendant's actions towards her made her feel angry, irritated, dismissed, and like less of a person. The Court credits this testimony. Furthermore, at the time of defendant's discriminatory acts, plaintiff was pregnant, was at defendant's office for her first visit to an obstetrician-gynecologist, and was waiting in the examining room disrobed, except for a hospital gown, from the waist down. Upon consideration of these facts, the Court believes that an award of compensatory damages in the amount of $10,000 is appropriate.[5]

### IV

For the above-stated reasons, the Court concludes that defendant violated the Rehabilitation Act and the D.C. Human Rights Act when he refused to treat plaintiff on July 18, 1994. Accordingly, the Court shall enter judgment in favor of plaintiff in the amount of $10,000. An Order consistent with the

---

4. Even if defendant had satisfied this burden, for the same reasons the Court found that defendant refused to treat her "solely" because of her disability, the Court finds that plaintiff has shown that defendant's proffered reasons are merely pretextual.

5. In several cases, larger awards have been given in discrimination cases brought under these statutes. *See, e.g., Howe v. Hull,* 873 F.Supp. 72, 74

(N.D.Ohio 1994) (jury awarded $62,000 in Rehabilitation Act suit); *Joel Truitt Mgmt., Inc. v. District of Columbia Comm'n on Human Rights,* 646 A.2d 1007, 1010 (D.C.1994) (affirming award of $35,000 in DCHRA case). Although plaintiff suffered emotional damages as the result of defendant's conduct, the Court does not view this case to be as egregious as the cases in which larger awards were given.

foregoing is being issued contemporaneously herewith.