**Brent E. FITZPATRICK, Plaintiff,**

v.

**COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF TRANSPORTATION, and Carol Tosi, Defendants.**

**No. CIV. A. 99–64.**

United States District Court,
E.D. Pennsylvania.

March 25, 1999.

---

Anita F. Alberts, Anita Alberts Associates, Doylestown, PA, for Plaintiff.

Sue Ann Unger, Office of Attorney General, Philadelphia, PA, for Defendants.

## MEMORANDUM & ORDER

KATZ, Senior District Judge.

Plaintiff Brent Fitzpatrick alleges that his termination by defendant Pennsylvania Department of Transportation (PennDOT) and by a PennDOT County Manager, Carl

Tosi, was in violation of various federal and state laws. Before the court is defendants' motion to dismiss the amended complaint.

*Factual Background* [1]

As a result of childhood polio, Mr. Fitzpatrick has an atrophied and paralyzed left shoulder and upper arm. *See* Compl. ¶ 5. He worked at PennDOT for nineteen years, starting in 1978 as a Highway Maintenance Worker. In 1982 he became an Equipment Operator B, a position he held until he was terminated in January 1997. His disability did not affect his ability to do those jobs. *See id.* ¶ 4. Mr. Fitzpatrick alleges that throughout his employment at PennDOT, he was discriminated against because of his disability. He was denied numerous opportunities for training and advancement, *see id.* ¶¶ 10, 17–23, and suffered multiple incidents of physical abuse from a supervisor. *See id.* ¶¶ 12–16, 24.

In November 1996, the events began that soon led to plaintiff's termination in January 1997. He was issued eleven disciplinary notices, the charges in which he claims were false. A series of disciplinary conferences were held to evaluate the accusations. *See* Compl. ¶ 32. One of the PennDOT officials in charge of the proceedings was the individual defendant in this case, County Manager Carl Tosi. Plaintiff alleges that he was not allowed to present evidence on his behalf or see the evidence against him, and that he was not allowed to attend four of the six conferences. *See* Compl. ¶ 32–38.

Plaintiff was discharged on January 10, 1997, effective January 17. The reasons given were that he left work early on November 6, that he threatened a cowork-

er and defaced state property on November 8, that he failed to report to the proper worksite on November 7 and 8, and that his attitude and work habits were unsatisfactory on November 7 and 8. *See* Compl. ¶ 41. These were some of the same charges in the disciplinary notices that plaintiff claims were fabricated.

After Mr. Fitzpatrick's discharge, PennDOT contested his application for unemployment compensation benefits, claiming he was guilty of willful misconduct. After a hearing, the referee found in Mr. Fitzpatrick's favor, and that ruling was affirmed on PennDOT's appeal. *See* Compl. ¶ 42. After his discharge, PennDOT also denied plaintiff the opportunity to obtain health insurance that he was entitled to by law. *See id.* ¶ 43. After plaintiff won his unemployment compensation benefits, PennDOT offered him his job back, on the condition that he agree that his time out of work was a disciplinary suspension and that he sign a statement that he had committed the charged offenses. Mr. Fitzpatrick refused to sign that agreement, and he did not return to work.. *See* Compl. ¶ 44–45.

Mr. Fitzpatrick's complaint in this lawsuit alleges that the disciplinary charges leading to his termination were made in retaliation for his complaints about harassment and about management's discriminatory treatment, which were both based on his disability. *See* Compl. ¶ 46. He alleges that his discharge, the interference with his receipt of health insurance, and PennDOT's attempt to force him to sign a false statement were likewise retaliatory. *See id.* ¶ 47–49. The amended complaint contains five counts: a § 1983 claim, a Reha-

---

1. Although defendants' motion is titled "Motion to Dismiss/Motion for Summary Judgment," it is in substance only a motion to dismiss. For the purposes of a 12(b)(6) motion to dismiss a complaint, this court must accept as true all the allegations of fact in plaintiff's complaint, must construe the complaint in the light most favorable to plaintiff, and must determine whether, under any reasonable reading of the pleadings, plaintiff may

be entitled to relief. *See Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir.1996). The court does not inquire as to whether plaintiff will ultimately prevail, only whether he is allowed to present evidence to support his claims. The motion to dismiss should be granted only if it appears that the plaintiff could prove no set of facts that would entitle him to relief. *See id.* The facts set forth in this section are taken from plaintiff's complaint.

bilitation Act claim, a Pennsylvania Human Relations Act (PHRA) claim, and a claim under the Pennsylvania Constitution against both PennDOT and Tosi, and an Americans with Disabilities Act (ADA) claim against PennDOT only. In the present 12(b)(6) motion, defendants move to dismiss various portions of each claim. The court will discuss each in turn.

*Counts I, IV, and V: Eleventh Amendment Immunity*

Count I is a § 1983 claim against both defendants PennDOT and Tosi, Count IV is a claim against both defendants under the Pennsylvania Human Relations Act (the PHRA), and Count V is a claim against both under the free speech clause of the Pennsylvania Constitution. Defendants argue that these counts should be dismissed because the Eleventh Amendment bars the claims. Defendants are correct.

■ The Eleventh Amendment bars suits against a state in federal court.[2] That immunity extends to entities that are arms of the state. *See Laskaris v. Thornburgh,* 661 F.2d 23, 25 (3d Cir.1981) (holding that the Eleventh Amendment covers "department or agencies of the state having no existence apart from the state"). PennDOT is clearly a state agency and thus eligible for Eleventh Amendment protection. *See Daye v. Com. of Pennsylvania,* 483 F.2d 294, 297–99 (3d Cir.1973) (holding the Commonwealth and PennDOT immune under the Eleventh Amendment, and that such immunity is not waived by the state's acceptance of federal highway funds); *Sitkoff v. BMW of North America,*

*Inc.,* 846 F.Supp. 380, 383 (E.D.Pa.1994) (stating that "[t]here is no dispute that PennDOT is the 'state' for 11th Amendment purposes"). The Eleventh Amendment also extends to suits for retrospective monetary relief against state officials in their official capacities, and thus protects defendant Tosi in his official capacity to the same extent it protects PennDOT. *See Kentucky v. Graham,* 473 U.S. 159, 169–170, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).[3]

■ There are two ways that a state may lose its Eleventh Amendment immunity: Congress can explicitly abrogate it in a particular statute, or a state can waive it with regard to a particular statute. *See Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 238, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985) ("[I]f a State waives its immunity and consents to suit in federal court, the Eleventh Amendment does not bar the action."); *Fitzpatrick v. Bitzer,* 427 U.S. 445, 456, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976) ("Congress may, in determining what is 'appropriate legislation' for the purpose of enforcing the provisions of the Fourteenth Amendment, provide for private suits against States or state officials which are constitutionally impermissible in other contexts."). Pennsylvania explicitly reserves its right to immunity from suit in federal court in 42 Pa.C.S.A. § 8521(b) ("Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States.").

---

2. The Eleventh Amendment provides, "The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any foreign state." The Amendment has long been interpreted to prohibit suits in federal court against a state by the defendant state's own citizens as well. *See Hans v. State of Louisiana,* 134 U.S. 1, 18, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

3. State officials in their official capacities do not have Eleventh Amendment immunity when sued for prospective injunctive relief. *See Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). The prayer for relief in each count makes a demand for money damages "plus such equitable injunctive relief as the Court may deem appropriate in the circumstances of this case." Defendants do not move to dismiss the counts as against Tosi for prospective injunctive relief.

■ The Supreme Court has held that Congress did not abrogate the Eleventh Amendment in enacting § 1983. *See Quern v. Jordan*, 440 U.S. 332, 345, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979) (reasoning that the statute itself does not include explicit and clear language doing so, nor does its history indicate that intent). Therefore, PennDOT's Eleventh Amendment immunity is intact, and the § 1983 claim is barred against PennDOT and Tosi in his official capacity for money damages. Count I will be dismissed accordingly.[4]

■ Likewise, Pennsylvania has not waived its Eleventh Amendment immunity to claims under the Pennsylvania Constitution or the PHRA. The Supreme Court has instructed that "[t]he test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one.... Thus, in order for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify the State's intention to subject itself to suit in *federal court*." *Atascadero*, 473 U.S. at 241, 105 S.Ct. 3142 (emphasis in original). The Commonwealth has not done so with regard to state constitutional claims, so that claim is barred. As for the PHRA, the Pennsylvania courts have ruled that the statute waives the state's sovereign immunity, thus allowing the Commonwealth to be sued under that statute in state court. *See Mansfield State College v. Kovich*, 46 Pa.Cmwlth. 399, 407 A.2d 1387, 1388 (Pa. Cmwlth.1979). This, however, is not enough to meet the Supreme Court's stringent test for waiver of Eleventh Amendment protections, especially considering

that Pennsylvania has by statute specifically withheld its consent to federal suit. *See* 42 Pa. Cons.Stat. Ann. § 8521(b). The Commonwealth's immunity thus remains intact, and Fitzpatrick's suit against it for monetary damages under the PHRA is barred. Therefore, Counts IV and V shall be dismissed as to PennDOT and Tosi in his official capacity for money damages.

*Counts IV and V: Sovereign Immunity for Tosi Individually*

The PHRA claim and constitutional claim in Counts IV and V also name Tosi individually. Defendants move to dismiss these counts as against him individually because he is protected by the Commonwealth's sovereign immunity.[5]

The Commonwealth of Pennsylvania has enacted a statute specifically preserving its sovereign immunity, subject to certain statutorily enumerated exceptions. *See* 1 Pa.C.S.A. § 2310 ("the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity"); 42 Pa.C.S.A. § 8522 (setting forth nine categories of cases in which sovereign immunity is waived).

■ As to the PHRA claim, the Pennsylvania courts have ruled that the Commonwealth waived its sovereign immunity in that statute. *See Mansfield State College v. Kovich*, 46 Pa.Cmwlth. 399, 407 A.2d 1387, 1388 (Pa.Cmwlth.1979) (holding that the statute's definition of "employer" subject to the act includes the

---

**4.** Moreover, PennDOT and its officials in their official capacities are not persons for the purposes of § 1983. In *Will v. Michigan Department of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), the Supreme Court held that a state is not a "person" subject to § 1983 liability and that the non-person status extends to "governmental entities that are considered arms of the state for Eleventh Amendment purposes." *Id.* at 70–71, 109 S.Ct. 2304. Because, as discussed above, PennDOT is an arm of the state, *Will*

provides an additional basis for the dismissal of this claim as to PennDOT and Tosi in his official capacity.

**5.** Defendants also make the sovereign immunity argument as to these claims against PennDOT. Because the claims against PennDOT are already dismissed on Eleventh Amendment immunity grounds, it is not necessary to consider the sovereign immunity argument.

Commonwealth). Thus, as to Count IV there is no sovereign immunity to cover Tosi. Count V, however, requires further analysis, because "[t]here is no waiver of general sovereign immunity for claims based upon the Pennsylvania Constitution." *Robinson v. Ridge,* 996 F.Supp. 447, 449 (E.D.Pa.1997), *citing Faust v. Commonwealth Dep't of Rev.,* 140 Pa. Cmwlth. 389, 592 A.2d 835, 839 (Pa. Cwlth.1991).

Sovereign immunity extends only to Commonwealth employees "acting within the scope of their duties." 1 Pa.C.S.A. § 2310. If Tosi was acting within the scope of his duties with regard to the allegations in this case, suit is barred against him as an individual. Plaintiff's complaint alleges that Tosi acted "outside the scope of his authority and contrary to official written PennDOT policy." Compl. ¶ 51. Development of the facts is needed for the court to make this determination. Defendants may reassert this argument in a motion for summary judgment if the facts warrant it.

*Count III: Individual Liability Under the Rehabilitation Act*

 Count III contains a claim against both defendants under § 504 of the Rehabilitation Act of 1973. Defendants argue that the claim against Tosi should be dismissed because an individual cannot be sued under this section.[6] The state of the law on this point is somewhat unsettled, as neither the Third Circuit nor any other Court of Appeals has directly addressed the question of whether the Rehabilitation Act permits individual liability.

Only two circuits have addressed the related question of whether the ADA permits individual liability, and both have ruled that it does not. *See Mason v. Stall-*

*ings,* 82 F.3d 1007, 1009 (11th Cir.1996) ("We hold that the Disabilities Act does not provide for individual liability, only for employer liability."); *U.S.E.E.O.C. v. AIC Security Investigations, Ltd.,* 55 F.3d 1276, 1279–82 (7th Cir.1995) (because an individual cannot meet the ADA's statutory definition of "employer," the district court erred in not dismissing the individual defendant). Numerous district courts have also so held. *See Figueroa v. Fajardo,* 1 F.Supp.2d 117, 120 (D.P.R.1998) (finding that the ADA does not provide for individual liability, analogizing to Title VII and ADEA); *Pell v. Trustees of Columbia Univ.,* No. 97 Civ. 0913, 1998 WL 19989, at *10–11 (S.D.N.Y. Jan.21, 1998) (holding that like Title VII, ADA suits should not be allowed against individuals); *Randolph v. Rodgers,* 980 F.Supp. 1051, 1060 (E.D.Mo.1997) (stating that nothing in the ADA or the Rehabilitation Act indicates that an individual employee was intended to be individually liable; rather, "[i]t is discrimination by the public entity that the statute forbids"); *Brantley v. Runyon,* No. C–1–96–842, 1997 WL 373739, at *3–4 (S.D.Ohio 1997) (dismissing individual ADA defendants because ADA defines "employer" similarly to Title VII and is interpreted like Title VII); *Haltek v. Park Forest,* 864 F.Supp. 802, 803–05 (N.D.Ill. 1994) (holding that there is no individual liability under Title VII, ADA, or Rehabilitation Act because an individual is not an "employer" under the statutory definition).[7]

In reaching this conclusion, the courts rely on the ADA's definition of "employer," which is in relevant respects identical to Title VII's definition. *Compare* 42 U.S.C. § 12111(5)(A) (the ADA: "a person engaged in an industry affecting commerce who has 15 or more employees ... and

---

**6.** Defendants also move to dismiss the ADA claim in Count II against Tosi on the same grounds. The court need not consider this argument, as the complaint explicitly states that "[t]his claim is not asserted against Carl Tosi as an individual defendant." Compl. ¶ 61.

**7.** Presumably, it is because of this growing consensus that when plaintiff amended his complaint to include a count under the ADA, he explicitly did not seek to impose individual liability on defendant Tosi. *See* Compl. ¶ 61.

any agent of such person") *with* 42 U.S.C. § 2000e(b) (Title VII: "a person engaged in an industry affecting commerce who has fifteen or more employees ... and any agent of such a person"). Because it is firmly established that individual employees cannot be held liable under Title VII's definition of employer, *see e.g., Dici v. Pennsylvania,* 91 F.3d 542, 552 (3d Cir. 1996), it follows that the same rule should apply under the Rehabilitation Act.

The Rehabilitation Act is to be interpreted like the ADA. This rule is mandated in the Act itself and by case law. *See* 29 U.S.C. § 794(d) (adopting the ADA's standards as "[t]he standards used to determine whether this section has been violated in a complaint alleging employment discrimination"); *McDonald v. Com. of Pennsylvania Dept. of Pub. Welfare,* 62 F.3d 92, 95 (3d Cir.1995) ("the substantive standards for determining liability are the same" in suits under the Rehabilitation Act and the ADA); *Newman v. GHS Osteopathic, Inc.,* 60 F.3d 153, 157 (3d Cir.1995) (procedural Title VII rules as to burdens of proof are equally applicable in ADA and Rehabilitation Act employment discrimination cases).

Based on that rule, and drawing on the same reasoning that leads to the conclusion that the ADA does not permit individual liability, several district courts have held that individuals may not be sued under the Rehabilitation Act. *See Baublitz v. State of California,* No. C980434, 1998 WL 427444 (N.D.Cal. July 27, 1998) (holding that the Rehabilitation Act does not authorize a claim against an individual); *Pell,* 1998 WL 19989, at * 10–11 (reasoning that it would be unsound policy to allow Rehabilitation Act or ADA suits against individuals when the Second Circuit has held individuals cannot be liable under the analogous provisions of Title VII); *Romand v. Zimmerman,* 881 F.Supp. 806, 811–12 (N.D.N.Y.1995) (dismissing Rehabilitation Act claims against individuals because the ADA's definition of "employer" mirrors that of Title VII, and the ADA's definition

is also applicable to the Rehabilitation Act); *Meling v. St. Francis College,* No. 95–CV–3739, 1997 WL 1068681 (E.D.N.Y. Apr.1, 1997) (holding that the Rehabilitation Act does not impose liability on individuals because the same rule should be applied as in Title VII cases); *Haltek,* 864 F.Supp. at 803–05 (holding that there is no individual liability under Title VII, ADA, or Rehabilitation Act because an individual is not an "employer" under the statutory definition); *Simenson v. Hoffman,* No. 95 C 1401, 1995 WL 631804, at *5 (N.D.Ill. Oct.24, 1995) (reasoning that because the Rehabilitation Act incorporates the liability standards of the ADA, the Seventh Circuit's rationale for prohibiting individual liability under the ADA applies equally to the Rehabilitation Act).

A few district courts have held that an individual may be liable under the Rehabilitation Act under certain circumstances. In *Johnson v. New York Hospital,* 897 F.Supp. 83 (S.D.N.Y.1995), the court ruled that "individuals who are responsible for the discriminatory decisions of organizations can be personally liable under the Rehabilitation Act," and applied that standard to rule that the hospital president but not the assistant director of nursing could be held liable. *Id.* at 85; *see also Lee v. Trustees of Dartmouth College,* 958 F.Supp. 37, 45 (D.N.H.1997) (citing to *Johnson* for the proposition that "[a] person who discriminates in violation of the Rehabilitation Act may be personally liable if he or she is in a position to accept or reject federal funds"). Note, however, that a court in the Southern District of New York last year declined to follow *Johnson* in *Pell,* instead adopting the reasoning of *Romand* and denying all § 504 claims against the individual defendants.

In *Guckenberger v. Boston University,* 957 F.Supp. 306 (D.Mass.1997), the court said,

> Because "Congress imposes the obligations of § 504 upon those who are in a position to accept or reject those obligations as part of the decision whether

or not to receive federal funds," individuals can be held liable for violations of the Rehabilitation Act if they are "in a position to accept or reject federal assistance" for a program or activity.

*Id.* at 323, *quoting Glanz v. Vernick,* 756 F.Supp. 632, 637 (D.Mass.1991). Another case relying on *Glanz* is *Doe v. City of Chicago,* 883 F.Supp. 1126 (N.D.Ill.1994), in which another court ruled that individual plaintiffs could be liable even if the complaint did not allege specifically that the individual defendants had discretion to accept funding as long as defendants "could exercise such authority consistently with the allegations of the complaint." *Id.* at 1137.[8]

The reasoning of *Johnson, Guckenberger, Doe,* and their progeny is flawed because of the reliance on *Glanz,* which faultily relied on *United States Department of Transportation v. Paralyzed Veterans of America,* 477 U.S. 597, 106 S.Ct. 2705, 91 L.Ed.2d 494 (1986). In *Paralyzed Veterans,* the Supreme Court addressed the question of whether airlines that benefit from federal funds given to airport operators were covered under the Rehabilitation Act as recipients of the funds. The court ruled they were not, explaining,

> By limiting coverage to recipients, Congress imposes the obligations of § 504 on those who are in a position to accept or reject those obligations as a part of the decision whether or not to 'receive' federal funds. In this case, the only parties in that position are the airport operators.

*Id.* at 606, 106 S.Ct. 2705. The court was distinguishing between the two sets of business entities, between intended recipients and intended beneficiaries. There was no question of liability of any individual employee in the case, and the court did not address any issue of individual liability.

The *Glanz* court accurately quoted the same language quoted above. The court then applied the test to the individual defendant doctor and ruled that he could not be held liable because he was not in a position to accept or reject federal assistance on behalf of his employer hospital. *Glanz,* 756 F.Supp. at 637. The court did not discuss the application of the *Paralyzed Veterans* language to an individual; the move was apparently based on reading the word "those" in "those who are in a position to accept or reject" as "those *individuals.*" Given that the *Paralyzed Veterans* court was not referring to individuals at all, but meant rather "those *entities,*" the basis for the *Glanz* court's reading is very weak. *Glanz*'s questionable reading is in turn the origin of the line of cases holding that individuals can be liable under the Rehabilitation Act. This court thus finds that line of cases unpersuasive and does not follow them.[9]

The court is persuaded by the reasoning of the cases disallowing individual Rehabilitation Act liability, as well as by the growing consensus toward this rule. To hold otherwise would be inconsistent with the Third Circuit's holdings that Title VII does not provide for individual liability and that the Rehabilitation Act, the ADA, and Title VII should be interpreted similarly in employment discrimination cases. Therefore, this court joins the numerous courts that have ruled that the Rehabilitation Act does not provide for individual liability, and Count III will be dismissed as against Tosi.

---

**8.** Other district courts have evidenced some confusion, contradictorily stating both the rule that individual liability is allowed and that it is not. *See Huck v. Mega Nursing Servs., Inc.,* 989 F.Supp. 1462, 1464 (S.D.Fla. 1997); *Lane v. Maryhaven Ctr. of Hope,* 944 F.Supp. 158, 163–64 (E.D.N.Y.1996).

**9.** Moreover, even if the court were to adopt this standard, Tosi would not be subject to individual liability. Even in the amended complaint filed in response to the first motion to dismiss, he is not alleged to be in a position to make decisions regarding federal funds. Even if an allegation is not required, *see Doe,* 883 F.Supp. at 1137, such authority is not consistent with the allegations in the complaint regarding his position.

## Conclusion

In sum, the court will dismiss the following portions of the complaint: Count I is dismissed as against defendant PennDOT and as against defendant Tosi in his official capacity for money damages. Count III is dismissed as against Tosi. Count IV is dismissed as as against defendant PennDOT and as against defendant Tosi in his official capacity for money damages. Count V is dismissed as as against defendant PennDOT and as against defendant Tosi in his official capacity for money damages.

An appropriate Order follows.

### ORDER

**AND NOW**, this 25th day of March, 1999, upon consideration of the Motion to Dismiss/Motion for Summary Judgment of the Commonwealth Defendants (Docket Nos. 6, 11), and the response therto, it is **ORDERED** that the said motion is **GRANTED** in part as follows: Count I is dismissed as against defendant PennDOT and as against defendant Tosi in his official capacity for money damages. Count III is dismissed as against Tosi. Count IV is dismissed as as against defendant PennDOT and as against defendant Tosi in his official capacity for money damages. Count V is dismissed as as against defendant PennDOT and as against defendant Tosi in his official capacity for money damages. The Motion is otherwise **DENIED.**